**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ERIK BLECHER, JAMES BRUNO,
ROBERT BURNS, EMMETT CALDWELL,
LOUIS CASTIGLIONE, KEVIN
CAVANAUGH, BRIAN COMPASSO,
WAYNE COMPASSO, VINCENT
DILLARD, JOHN GILLEN, STEPHEN
HURN, JOSEPH JOCKEL, MARIANNE
AGNELLO, DIANNE MONDELLO,
VERNON ALLEN JONES, MICHAEL
LEONARD, JOHN O'CONNOR, THOMAS
O'CONNOR, DANIEL RICE, JOSEPH
RUSSO, TOM SPARKS, PETER
SENATORE, MATTHEW SEXTON,
LAWRENCE SMITH, NEIL M. CURTIS,
ROBERT R. LISIECKI, JACQUELINE
REGAN, JORDAN TAYLOR, DESIREE
CALLENDER, and MICHAEL GILL, on
behalf of themselves and all persons similarly
situated,

                      Plaintiffs,

      v.

The HOLY SEE, a/k/a the APOSTOLIC SEE,

                    Defendant.

Case No. 1:20-cv-03545-JPO

**DEFENDANT HOLY SEE'S**
**MEMORANDUM OF LAW IN SUPPORT**
**OF SECOND MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER**
**JURISDICTION, LACK OF PERSONAL**
**JURISDICTION, IMPROPER VENUE,**
**AND FAILURE TO STATE A CLAIM**
**UPON WHICH RELIEF CAN BE**
**GRANTED**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

LEGAL STANDARD ...................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.      THE COURT SHOULD DISMISS NINETEEN PLAINTIFFS FOR IMPROPER VENUE ................................................................................. 3

II.     THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT ...................................................................................... 7

     A.    Foreign Sovereign Immunities Act ........................................................ 7

     B.    The Tort Exception Does Not Confer Jurisdiction .................................... 7

         1.    Any Alleged Tortious Conduct by Separate Entities in the United States Cannot Confer Jurisdiction Over the Holy See Under the Tort Exception .................................... 8

         2.    Any Alleged Tortious Conduct by "Agents" Cannot Confer Jurisdiction Under the Tort Exception ............................ 11

         3.    Contrary to Plaintiffs' Allegation, Diocesan Bishops are Not Holy See "Officials" as a Matter of Law ............................... 12

         4.    Under the Doctrine of Limited Liability, Plaintiffs' Employment Theory Cannot Sustain Jurisdiction Under the Tort Exception ........................................................................ 14

         5.    Even Leaving Aside the Doctrine of Limited Liability, Plaintiffs Do Not Sufficiently Allege that Any Holy See Employee Committed Tortious Conduct in the United States ......................................................................................... 15

            a.    This Court Should Apply Federal Common Law with Regard to Employment ............................................. 15

            b.    Plaintiffs' Employment Allegations are Insufficient Whether Analyzed Under Federal Common Law or New York State Law .......................... 16

         6.    Any Alleged Tortious Conduct by the Holy See Cannot Confer Jurisdiction Under the Tort Exception ............................ 17

            a.    The Tort Exception Does Not Confer Jurisdiction Because Any Alleged Holy See Conduct Did Not Occur Entirely in the United States .................................. 17

    b. The Tort Exception Does Not Confer Jurisdiction Because Plaintiffs Fail to Allege Any Facts Showing that Their Injuries Were Caused by the Holy See's Tortious Conduct ............................................ 19

  7. The Misrepresentation Exclusion to the Tort Exception Independently Precludes Jurisdiction Over Plaintiffs' Negligence Claim ................................................................ 20

  8. The Discretionary Function Exclusion to the Tort Exception Independently Precludes Jurisdiction Over Plaintiffs' Negligence Claim ................................................. 22

    a. Legal Standard ................................................. 22

    b. The DFE's First Prong is Met Because the Complaint Fails to Allege that the Challenged Conduct Did Not Involve Any Element of Judgment, Choice, or Discretion ......................................... 23

    c. The DFE's Second Prong is Met Because the Alleged Conduct Involved the Type of Discretionary Judgments that the Exclusion was Designed to Protect ............................................ 25

  9. Plaintiffs' Jury Trial and Punitive Damages Requests Should be Stricken ........................................................ 27

III. THE COURT SHOULD DISMISS FOR LACK OF STANDING ..................... 27

IV. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM ................................................................................. 28

 A. Plaintiffs' Claim Fails as a Matter of Law ................................. 28

  1. Plaintiffs' Vicarious Liability Theories Fail ................................. 28

  2. Plaintiffs' Negligence Claim Fails ................................. 29

  3. Plaintiffs' Negligent Failure to Report Theory Fails ................... 31

 B. The CVA Does Not Apply to Plaintiffs' Claim Against the Holy See, Which is Otherwise Time-Barred ...................................... 34

CONCLUSION ................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abrams Shell v. Shell Oil Co.*,
  343 F.3d 482 (5th Cir. 2003) ........................................................................... 4

*Alford v. U.S.*,
  116 F.3d 334 (8th Cir. 1997) ......................................................................... 28

*Alperin v. Vatican Bank*,
  360 F. App'x 847 (9th Cir. 2009) .................................................................... 1

*Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*,
  No. C 12-3103 SI, 2012 WL 4097711 (N.D. Cal. Sept. 17, 2012)................................... 10

*Americans United for Separation of Church and State v. Reagan*,
  786 F.2d 194 (3d Cir. 1986)............................................................................. 1

*Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*,
  138 S. Ct. 1865 (2018)................................................................................. 14

*Apolinar v. R.J. 49 REST., LLC*,
  No. 15-CV-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016)........................ 10

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)........................................................................... 7, 11, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................ 1, 2, 10, 12, 19, 20, 28

*Banks v. Soo Song*,
  No. 2:17-CV-00277-DBH, 2017 WL 3283864 (D. Me. Aug. 2, 2017)............................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................... 1

*Block v. Neal*,
  460 U.S. 289 (1983)................................................................................... 21

*Boda v. U.S.*,
  698 F.2d 1174 (11th Cir. 1983) ..................................................................... 22

*Bouchard v. N.Y. Archdiocese*,
  No. 04 CIV. 9978 (CSH), 2006 WL 1375232 (S.D.N.Y. May 18, 2006) ...................... 29

*Breard v. Greene*,
  523 U.S. 371 (1998)................................................................................... 34

*Broidy Cap. Mgmt., LLC v. State of Qatar,*
   982 F.3d 582 (9th Cir. 2020) ........................................................................... 25

*Brown v. U.S.,*
   661 F. Supp. 2d 341 (E.D.N.Y. 2009) ............................................................. 26

*Bynog v. Cipriani Grp., Inc.,*
   1 N.Y.3d 193 (2003) ........................................................................................ 17

*Cabiri v. Gov't of Republic of Ghana,*
   165 F.3d 193 (2d Cir. 1999) ............................................................................ 21

*Chenevert v. Springer,*
   No. CIV.A.C-09-35, 2009 WL 2215115 (S.D. Tex. July 22, 2009) .................... 5

*City & Cty. of San Francisco v. U.S.,*
   615 F.2d 498 (9th Cir. 1980) ........................................................................... 21

*Clarke v. U.S.,*
   107 F. Supp. 3d 238 (E.D.N.Y. 2015) ............................................................. 25

*Cmty. for Creative Non-Violence v. Reid,*
   490 U.S. 730 (1989) .................................................................................. 15, 17

*Cook v. UBS Fin. Servs., Inc.,*
   2006 WL 760284 (S.D.N.Y. Mar. 21, 2006) ...................................................... 4

*Courtney v. U.S.,*
   230 F.2d 112 (2d Cir. 1956) ............................................................................ 16

*Croyle by & through Croyle v. U.S.,*
   908 F.3d 377 (8th Cir. 2018) ..................................................................... 25, 26

*Ctr. for L. and Educ. v. Dep't of Educ.,*
   396 F.3d 1152 (D.C. Cir. 2005) ....................................................................... 28

*D'Amico v. Christie,*
   71 N.Y.2d 76 (1987) ........................................................................................ 29

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ......................................................................................... 27

*Dale v. Colagiovanni,*
   443 F.3d 425 (5th Cir. 2006) ............................................................................. 1

*de Fontbrune v. Wofsy,*
   838 F.3d 992 (9th Cir. 2016) ............................................................................. 2

*De Quan Lu v. Red Koi, Inc.*,
  No. 17-CV-7291 (VEC), 2020 WL 7711410 (S.D.N.Y. Dec. 29, 2020) .......................... 10

*de Sanchez v. Banco Cent. De Nicaragua*,
  770 F.2d 1385 (5th Cir. 1985) ......................................................................................... 19

*Deloria v. Veterans Admin.*,
  927 F.2d 1009 (7th Cir. 1991) ......................................................................................... 21

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) .............................................................................. 18

*Dep't of Com. v. N.Y.*,
  139 S. Ct. 2551 (2019) ...................................................................................................... 28

*Diana G-D ex rel. Ann D. v. Bedford Cent. Sch. Dist.*,
  932 N.Y.S.2d 316 (Sup. Ct. 2011) ................................................................................... 33

*Doe v. Fed. Democratic Republic of Ethiopia*,
  851 F.3d 7 (D.C. Cir. 2017) ............................................................................................. 18

*Doe v. Holy See (State of Vatican City)*,
  793 N.Y.S.2d 565 (App. Div. 2005) ................................................................................. 30

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) ....................................................... 1, 9, 10, 21, 22, 25, 26

*Doe v. Maier*,
  No. CV184956SJFAKT, 2020 WL 9812927 (E.D.N.Y. Mar. 24, 2020) ........................ 30

*Dorking Genetics v. U.S.*,
  76 F.3d 1261 (2d Cir. 1996) ............................................................................................. 21

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
  322 F.3d 635 (9th Cir. 2003) ............................................................................................. 7

*Elder v. U.S.*,
  312 F.3d 1172 (10th Cir. 2002) ........................................................................................ 23

*EM Ltd. v. Banco Cent. De La Republica Arg.*,
  800 F.3d 78 (2d Cir. 2015) ............................................................................................... 10

*English v. Thorne*,
  676 F. Supp. 761 (S.D. Miss. 1987) ............................................................................ 1, 18

*Est. of Pesante ex rel. Pesante v. Geneva Med. Grp.*, LLP,
  No. 30779, 2002 WL 398517 (N.Y. Sup. Ct. Mar. 11, 2002) .......................................... 33

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ............................................................................................. 1

*Facchetti v. Bridgewater Coll.*,
    175 F. Supp. 3d 627 (W.D. Va. 2016) .......................................................................... 31

*Fam. Fashions, Inc. v. Sterling Jewelers, Inc.*,
    No. 18 CIV. 9919, 2019 WL 3802225 (S.D.N.Y. Aug. 12, 2019) ................................... 2

*Fed. Republic of Ger. v. Philipp*,
    141 S. Ct. 703 (2021) ............................................................................................... 7, 18

*Feldman v. L & M Mowing, Inc.*,
    No. 98 CV 4246SJ, 1999 WL 284983 (E.D.N.Y. May 3, 1999) ...................................... 6

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba* ("*Bancec*"),
    462 U.S. 611 (1983) ...................................................................... 9, 15, 16, 34, 35

*Fisher v. Int'l Student Exch., Inc.*,
    38 F. Supp. 3d 276 (E.D.N.Y. 2014) ............................................................................. 5

*Fountain v. Karim*,
    838 F.3d 129 (2d Cir. 2016) ......................................................................................... 16

*Fried v. LVI Servs., Inc.*,
    No. 10 CIV. 9308 JSR, 2011 WL 2119748 (S.D.N.Y. May 23, 2011) ........................... 14

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
    582 F.3d 393 (2d Cir. 2009) ................................................................................... 34, 35

*Gabay v. Mostazafan Found. of Iran*,
    968 F. Supp. 895 (S.D.N.Y. 1997) ................................................................................. 7

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ......................................................................................... 9, 10

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ............................................................................................... 12, 16

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ........................................................................................... 5

*Haven v. Polska*,
    215 F.3d 727 (7th Cir. 2000) ......................................................................................... 7

*Hekmat v. U.S. Transportation Sec. Admin.*,
    247 F. Supp. 3d 427 (S.D.N.Y. 2017) ..................................................................... 25, 26

*Hinsley v. Standing Rock Child Prot. Servs.*,
  516 F.3d 668 (8th Cir. 2008) ................................................................ 25, 26

*Holloway v. Holy See*,
  --- F. Supp. 3d ---, No. 19 CIV. 2195 (NRB), 2021 WL 1791456
  (S.D.N.Y. May 5, 2021)................................................................ 4, 5, 6

*In re Archdiocese of Milwaukee*,
  No. 11-20059-SVK, 2015 WL 1396628 (Bankr. E.D. Wis. Mar. 24, 2015)................... 30

*In re Fox's Will*,
  52 N.Y. 530 (1873) ............................................................................ 34

*In re Frances*,
  267 N.Y.S.2d 566 (Fam. Ct. 1966) ............................................................ 32

*In re Joint E. & S. Districts Asbestos Litig.*,
  891 F.2d 31 (2d Cir. 1989)................................................................. 26

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 109 (2d Cir. 2013)................................................... 8, 18, 19

*In re Young*,
  270 N.Y.S.2d 250 (Fam. Ct. 1966) ........................................................ 32

*Janowsky v. U.S.*,
  913 F.2d 393 (7th Cir. 1990) ............................................................. 20

*JBP Acquisitions LP v. U.S. ex rel. FDIC*,
  224 F.3d 1260 (11th Cir. 2000) .......................................................... 21

*Jerez v. Republic of Cuba*,
  775 F.3d 419 (D.C. Cir. 2014)............................................................ 18

*Jonathan A. v. Bd. of Educ. of N.Y.*,
  779 N.Y.S.2d 3 (App. Div. 2004) ......................................................... 30

*Jones v. U.S.*,
  137 U.S. 202 (1890)........................................................................ 1

*Kenneth R. v. Roman Cath. Diocese of Brooklyn*,
  654 N.Y.S.2d 791 (App. Div. 1997)....................................................... 30

*Kimberly S.M. by Mariann D.M. v. Bradford Cent. Sch.*,
  649 N.Y.S.2d 588 (App. Div. 1996)....................................................... 30

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010)............................................................... 1

*Kirschenbaum v. Assa Corp.*,
    934 F.3d 191 (2d Cir. 2019) ........................................................................ 9

*Lawrence v. U.S.*,
    340 F.3d 952 (9th Cir. 2003) ................................................................ 22, 26

*Leonard v. Masterson*,
    70 A.D.3d 697 (2d Dep't 2010) ................................................................ 34

*Leone v. U.S.*,
    910 F.2d 46 (2d Cir. 1990) ........................................................................ 17

*Logue v. U.S.*,
    412 U.S. 521 (1973) .................................................................................... 17

*Lorillard v. Pons*,
    434 U.S. 575 (1978) .................................................................................... 16

*Lucesco Inc. v. Republic of Arg.*,
    788 F. App'x 764 (2d Cir. 2019) ............................................................ 35

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 27

*Lurene F. v. Olsson*,
    740 N.Y.S.2d 797 (Sup. Ct. 2002) ............................................................ 33

*Luxexpress 2016 Corp. v. Gov't of Ukraine*,
    No. 15-CV-4880 (VSB), 2018 WL 1626143 (S.D.N.Y. Mar. 30, 2018) .......................... 4

*MacArthur Area Citizens Ass'n v. Republic of Peru*,
    809 F.2d 918 (D.C. Cir. 1987) .................................................................... 8

*Mantissa Corp. v. Great Am. Bancorp, Inc.*,
    446 F. Supp. 3d 398 (C.D. Ill. 2020) ........................................................ 7

*Marcelletti v. Bathani*,
    500 N.W.2d 124 (Mich. App. 1993) .......................................................... 33

*Maryland Cas. Co. v. U.S.*,
    No. C 05-02558 JSW, 2006 WL 563046 (N.D. Cal. Mar. 6, 2006) ................................ 20

*Maryland for Use of Levin v. U.S.*,
    381 U.S. 41 (1965) ...................................................................................... 16

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) .......................................................................... 4

*Molchatsky v. U.S.*,
    713 F.3d 159 (2d Cir. 2013)...................................................... 22, 24

*Muniz-Rivera v. U.S.*,
    326 F.3d 8 (1st Cir. 2003) .......................................................... 21

*Nieves Martinez v. U.S.*,
    997 F.3d 867 (9th Cir. 2021) ...................................................... 23

*O'Bryan v. Holy See*,
    556 F.3d 361 (6th Cir. 2009) .............................................. 1, 18, 19

*O'Connor v. Davis*,
    126 F.3d 112 (2d Cir. 1997)..................................................... 15, 17

*Pablo Star Ltd. v. Welsh Gov't*,
    170 F. Supp. 3d 597 (S.D.N.Y. 2016)............................................. 5

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
    899 F.3d 1081 (9th Cir. 2018) .................................................... 13

*Pasternack v. Lab. Corp. of Am. Holdings*,
    807 F.3d 14 (2d Cir. 2015)......................................................... 29

*Paul J.H. v. Lum*,
    736 N.Y.S.2d 561 (App. Div. 2002) .............................................. 20

*Pink v. Rome Youth Hockey Ass'n, Inc.*,
    28 N.Y.3d 994 (2016) ................................................................ 30

*Pornomo v. U.S.*,
    814 F.3d 681 (4th Cir. 2016) ...................................................... 24

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
    303 F. Supp. 2d 391 (S.D.N.Y. 2004)............................................. 6

*Pratt v. Robinson*,
    39 N.Y.2d 554 (1976) ................................................................ 30

*Purdy v. Pub. Adm'r of Westchester Cty.*,
    72 N.Y.2d 1 (1988) ................................................................... 29

*R.C. v. Diesfeld*,
    785 N.Y.S.2d 325 (Sup. Ct. 2004)................................................ 33

*Randolph v. Budget Rent-A-Car*,
    97 F.3d 319 (9th Cir. 1996) ....................................................... 16

*Redmond v. U.S. By & Through Sec. & Exch. Comm'n of U.S.,*
    518 F.2d 811 (7th Cir. 1975) ................................................................. 21, 22

*Republic of Philippines v. Pimentel,*
    553 U.S. 851 (2008) ................................................................................ 12

*Republic of Sudan v. Harrison,*
    139 S. Ct. 1048 (2019) ............................................................................ 11

*Risk v. Halvorsen,*
    936 F.2d 393 (9th Cir. 1991) ............................................................. 23, 25

*Robinson v. Gov't of Malay.,*
    269 F.3d 133 (2d Cir. 2001) ................................................................. 2, 20

*Rodriguez v. Pan Am. Health Org.,*
    --- F. Supp. 3d ---, 2020 WL 1666757 (S.D. Fla. Apr. 3, 2020) ............... 3, 4

*Rosas v. Brock,*
    826 F.2d 1004 (11th Cir. 1987) ............................................................... 24

*Rosebush v. U.S.,*
    119 F.3d 438 (6th Cir. 1997) ................................................................... 25

*Samantar v. Yousuf,*
    560 U.S. 305 (2010) ................................................................................ 12

*Sanchez v. State,*
    99 N.Y.2d 247 (2002) .............................................................................. 30

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) .................................................................................. 1

*Serbian E. Orthodox Diocese v. Milivojevich,*
    426 U.S. 696 (1976) ................................................................................ 28

*Servaas Inc. v. Republic of Iraq,*
    686 F. Supp. 2d 346 (S.D.N.Y. 2010) ........................................................ 7

*Simmons v. U.S.,*
    764 F. App'x 98 (2d Cir. 2019) ................................................................ 26

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ............................................................................ 27, 28

*Spar, Inc. v. Info. Res., Inc.,*
    956 F.2d 392 (2d Cir. 1992) ...................................................................... 6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................... 27

*Swarna v. Al-Awadi*,
  622 F.3d 123 (2d Cir. 2010) ........................................................... 19

*Tifa Ltd. v. Republic of Ghana*,
  692 F. Supp. 393 (D.N.J. 1988) ....................................................... 5

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*,
  411 F.3d 296 (D.C. Cir. 2005) ......................................................... 35

*TransAmerica Leasing, Inc. v. La Republica de Venez.*,
  200 F.3d 843 (D.C. Cir. 2000) ......................................................... 10

*U.S. Aviation Underwriters, Inc. v. Dassault Aviation*,
  No. 4:03CV00994 GH, 2005 WL 2403724 (E.D. Ark. Sept. 28, 2005) ............................ 4

*U.S. ex rel. Sero v. Preiser*,
  506 F.2d 1115 (2d Cir. 1974) ........................................................... 4

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................... 10, 14

*U.S. v. Gaubert*,
  499 U.S. 315 (1991) ................................................................. 23, 24

*U.S. v. Neustadt*,
  366 U.S. 696 (1961) .............................................................. 20, 21, 22

*U.S. v. Orleans*,
  425 U.S. 807 (1976) ................................................................... 17

*U.S. v. Tyson Foods, Inc.*,
  258 F. Supp. 2d 809 (E.D. Tenn. 2003) ................................................. 11

*USAirways Grp., Inc. v. British Airways PLC*,
  989 F. Supp. 482 (S.D.N.Y. 1997) ..................................................... 14

*Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation*,
  730 F.2d 195 (5th Cir. 1984) ......................................................... 10

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983) ................................................................... 16

*Watson v. Jones*,
  80 U.S. 679 (1872) ................................................................... 28

*White Hawthorne, LLC v. Republic of Argentina,*
    No. 16-CV-1042 (TPG), 2016 WL 7441699 (S.D.N.Y. Dec. 22, 2016) ........................ 35

*Whitted v. Konkle,*
    No. 417CV00241SEBDML, 2018 WL 3619539 (S.D. Ind. July 30, 2018).................... 31

*World Holdings, LLC v. Fed. Republic of Ger.,*
    794 F. Supp. 2d 1341 (S.D. Fla. 2011) .................................................................. 35

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,*
    215 F.3d 247 (2d Cir. 2000)................................................................................. 9

*Zimmerman ex rel. Zimmerman v. U.S.,*
    171 F. Supp. 2d 281 (S.D.N.Y. 2001).................................................................. 33

**STATUTES**

18 U.S.C. § 112(c) ............................................................................................... 12

18 U.S.C. § 970(c) ............................................................................................... 12

18 U.S.C. § 1116(b)(3)(B) ..................................................................................... 12

28 U.S.C. § 1330 ............................................................................................. 7, 27

28 U.S.C. § 1346 ................................................................................................. 16

28 U.S.C. § 1391(b) .............................................................................................. 3

28 U.S.C. § 1391(c) .............................................................................................. 3

28 U.S.C. § 1391(f) .......................................................................................... 3, 4, 5

28 U.S.C. § 1406(a) .............................................................................................. 6

28 U.S.C. § 1604 ................................................................................................. 7

28 U.S.C. § 1605(a)(5)........................................... 8, 9, 11, 12, 14, 15, 18, 19, 22

28 U.S.C. § 1605(a)(5)(A) ............................................................................ 8, 22, 26

28 U.S.C. § 1605(a)(5)(B) ............................................................................ 8, 20, 22

28 U.S.C. § 1605A .......................................................................................... 11, 12

28 U.S.C. § 1606 ............................................................................................. 16, 27

28 U.S.C. § 2680 ................................................................................................. 20

1964 N.Y. Laws 2123 (chapter 811) ............................................................................. 32

1973 N.Y. Laws 2910-11 (chapter 1029) ...................................................................... 32

2007 Sess. Law News of N.Y. Ch. 193 (S. 3913–A)..................................................... 32

CPLR § 214..................................................................................................................... 35

CPLR § 214-g................................................................................................................. 34

N.Y. Gen. Constr. Law § 37 .......................................................................................... 34

N.Y. Penal Law § 483-d ................................................................................................. 32

N.Y. Soc. Serv. Law § 413 ................................................................................ 31, 32, 33

N.Y. Soc. Serv. Law § 420 ............................................................................................. 33

**RULES**

Fed. R. Civ. P. 8(a) .......................................................................................................... 1

Fed. R. Civ. P. 12(b)(1).................................................................................................... 1

Fed. R. Civ. P. 12(b)(2).................................................................................................... 1

Fed. R. Civ. P. 12(b)(3).................................................................................................... 1

Fed. R. Civ. P. 12(b)(6).................................................................................................... 1

Fed. R. Civ. P. 44.1.......................................................................................................... 2

Fed. R. Crim. P. 6(e)(2)(B) ........................................................................................... 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III ........................................................................................................... 1

**OTHER AUTHORITIES**

*Black's Law Dictionary* ............................................................................................... 12

H.R. Rep. No. 94-1487 ................................................................................................... 16

New York Bill Jacket, 2007 S.B. 3913, Ch. 193 ........................................................... 32

**TABLE OF SHORT CITATIONS**

| Short Citation | Original Title |
|---|---|
| Bettetini Decl. | Declaration of Professor Andrea Bettetini in Support of Defendant Holy See's Second Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Upon Which Relief Can Be Granted (filed and served herewith) |
| *Bruno* Complaint | Class Action Complaint filed on August 13, 2021, in the United States District Court for the Eastern District of New York in *Bruno, et al. v. Holy See*, Case No. 1:21-cv-04559-RPK-RER, attached as <u>Exhibit H</u> to the Haller Decl. |
| Complaint or FAC | Amended Class Action Complaint (Dkt. 40) |
| *Crimen sollicitationis* or *Crimen* | *Instruction on the Manner of Proceeding in Causes Involving the Crime of Solicitation* (Vatican Polyglot Press, 1962), attached as <u>Exhibit G</u> to the Haller Decl. |
| Haller Decl. | Declaration of Alexis Haller in Support of Defendant Holy See's Second Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Upon Which Relief Can Be Granted (filed and served herewith) |
| *Hurn* Complaint | Class Action Complaint filed on August 13, 2021, in the United States District Court for the Northern District of New York in *Hurn, et al. v. Holy See*, Case No. 1:21-cv-00913-TJM-DJS, attached as <u>Exhibit I</u> to the Haller Decl. |

## INTRODUCTION

The Court should dismiss Plaintiffs' Complaint against the Holy See for lack of jurisdiction under the Foreign Sovereign Immunities Act (FSIA) and for lack of standing under Article III of the United States Constitution. The Court should also dismiss the Complaint for improper venue as to nineteen of the Plaintiffs and for failure to state a claim upon which relief may be granted.

## LEGAL STANDARD

The Holy See, a foreign sovereign, raises a facial attack under Rule 12(b)(1)-(3) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  In evaluating a facial attack, only a plaintiff's well-pleaded factual allegations are taken as true.  *Kiobel v. Royal Dutch Petroleum Co*., 621 F.3d 111, 124 (2d Cir. 2010); *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993).

The Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) mandate courts to undertake a "two-pronged approach" to analyzing the sufficiency of a complaint.  *Iqbal*, 556 U.S. at 679; *see also*, *e.g.*, *Alperin v. Vatican Bank*, 360 F. App'x 847, 849 (9th Cir. 2009) (applying *Iqbal* to facial challenge under the FSIA); Fed. R. Civ. P. 8(a).[2]  First, a court must identify allegations "that are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 680.  This includes "naked assertion[s]," unwarranted inferences, and "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Id.* at 678-79; *Twombly*, 550 U.S. at 557; *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011); *see also*

---

[1] Contrary to the Complaint's allegation, the Holy See is not an "agency or instrumentality of a foreign state."  FAC ¶ 37.  Federal courts have treated the Holy See as a foreign state under the FSIA for over 30 years.  *See*, *e.g.*, *English v. Thorne*, 676 F. Supp. 761 (S.D. Miss. 1987); *Dale v. Colagiovanni*, 443 F.3d 425 (5th Cir. 2006); *O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir. 2009); *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009).  The Holy See's status as a recognized foreign sovereign is non-justiciable.  *Americans United for Separation of Church and State v. Reagan*, 786 F.2d 194, 197, 201-02 (3d Cir. 1986); *see also*, *e.g.*, *Jones v. U.S.*, 137 U.S. 202, 212 (1890) ("Who is the sovereign, *de jure* or *de facto*, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government.").

[2] Emphasis is added, and citations and internal quotations are omitted, throughout this brief, except as otherwise indicated.

1

*Robinson v. Gov't of Malay.*, 269 F.3d 133, 146 (2d Cir. 2001) (rejecting "vague and conclusory allegations" under the FSIA).  Second, a court must analyze the complaint's well-pleaded facts to determine whether it "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint has "plausibility" only if its non-conclusory factual allegations allow a court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The "mere possibility" that a defendant committed misconduct is insufficient.  *Id.* at 679.

In ruling on a facial motion to dismiss, a court may consider documents referenced in the complaint and "matters of which judicial notice may be taken." *Fam. Fashions, Inc. v. Sterling Jewelers, Inc.*, No. 18 CIV. 9919, 2019 WL 3802225, at *2 (S.D.N.Y. Aug. 12, 2019).  A court may also consider foreign law.  *de Fontbrune v. Wofsy*, 838 F.3d 992, 996-1000 (9th Cir. 2016); *see also* Fed. R. Civ. P. 44.1 (determination of foreign law is "a ruling on a question of law").

## FACTUAL BACKGROUND

This putative class action was filed by thirty plaintiffs ("Plaintiffs") against the Holy See. Plaintiffs allege abuse in the 1960s, 1970s, 1980s and 1990s by local priests or deacons of the Archdiocese of New York (Plaintiffs Erik Blecher, Emmett Caldwell, Vincent Dillard, Michael Leonard, Daniel Rice, Neil Curtis, Robert Lisiecki, Jacqueline Regan, Jordan Taylor, Desiree Callender, and Michael Gill), the Diocese of Brooklyn (Plaintiffs James Bruno, Robert Burns, Louis Castiglione, Kevin Cavanaugh, John Gillen, Marianne Agnello, Dianne Mondello, Vernon Allen Jones, John O'Connor, Thomas O'Connor, Peter Senatore, and Lawrence Smith), the Diocese of Rockville Centre (Brian Compasso, Wayne Compasso, Joseph Jockel, Joseph Russo, and Matthew Sexton), the Diocese of Syracuse (Stephen Hurn), and the Diocese of Ogdensburg (Tom Sparks).  FAC ¶¶ 4-33.  The Archdiocese of New York, the Diocese of Brooklyn, the Diocese of Rockville Centre, the Diocese of Syracuse and the Diocese of Ogdensburg (collectively "the New York Corporations") were all separate corporations organized and existing under New York

law during the relevant time periods.  Haller Decl., Exhs. A-F.  Except for Callender and Gill, each Plaintiff settled with and released the correlative diocese prior to bringing this lawsuit against the Holy See for identical injuries.  FAC ¶ 94.

While the Complaint identifies the abusers (FAC ¶¶ 4-33), it nowhere alleges that the Holy See was aware of the existence of these clerics, much less that the Holy See knew that they posed a danger to minors prior to their abuse of Plaintiffs.  Instead, Plaintiffs theorize that the Holy See had a "secrecy policy" set forth in *Crimen sollicitationis* that "mandated that the Bishop follow a specific course of action in response to an allegation of child sexual abuse."  FAC ¶¶ 64-68. Plaintiffs claim that the Holy See "knew or should have known that its strict secrecy policy would result in children in contact with Catholic clergy being sexually abused."  FAC ¶ 111.

Based upon these allegations, each Plaintiff advances a single negligence claim predicated on the failure to warn children and parents of the dangers generally posed by "Catholic clergy" and the failure to report sex abusers to law enforcement and others.  FAC ¶¶ 107-33.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS NINETEEN PLAINTIFFS FOR IMPROPER VENUE

The Court should dismiss Plaintiffs Bruno, Burns, Castiglione, Cavanaugh, Gillen, Agnello, Mondello, Jones, J. O'Connor, T. O'Connor, Senatore, Smith, B. Compasso, W. Compasso, Jockel, Russo, Sexton, Hurn and Sparks for improper venue because none of the events giving rise to their claim occurred in the Southern District of New York.  28 U.S.C. § 1391(f)(1).

Plaintiffs assert that venue is proper pursuant to section 1391(b)(2)-(3) and (c)(3).  FAC ¶ 42.  However, none of these provisions is applicable in a case against a foreign state.  Instead, "[s]ection 1391(*f*) controls venue in every case where a foreign state is named as a defendant." *Rodriguez v. Pan Am. Health Org.*, --- F. Supp. 3d ---, 2020 WL 1666757, at *9 (S.D. Fla. Apr. 3,

2020); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) (stating that the FSIA's "venue requirements are set forth in 28 U.S.C. § 1391(f)"); *Holloway v. Holy See*, --- F. Supp. 3d ---, No. 19 CIV. 2195 (NRB), 2021 WL 1791456, at *2-3 (S.D.N.Y. May 5, 2021) (applying section 1391(f) in dismissing case against the Holy See for improper venue).  Section 1391(f) "provides a foreign state with special procedural treatment with regard to venue."  *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, No. 4:03CV00994 GH, 2005 WL 2403724, at *6 (E.D. Ark. Sept. 28, 2005); *see also*, *e.g.*, *Mobil Cerro Negro, Ltd.*, 863 F.3d at 124 (section 1391(f) is one of "the FSIA's procedural mandates").  The provision controls "'where' the foreign state can be sued" and is a key "feature[] of foreign sovereign immunity." *Rodriguez*, 2020 WL 1666757, at *8.

Plaintiffs bear the burden of establishing that venue is proper under section 1391(f). *Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 15-CV-4880 (VSB), 2018 WL 1626143, at *4 (S.D.N.Y. Mar. 30, 2018).[3]  The fact that this case was filed as a putative class action has no bearing on whether venue is proper, since "all named plaintiffs to a class action must satisfy the venue requirements."  *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 490 (5th Cir. 2003); *see also U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1129 (2d Cir. 1974) (holding that venue provision "may be satisfied if only the named parties to a class action meet its requirements"); *Cook v. UBS Fin. Servs., Inc.*, 2006 WL 760284, at *6, n.2 (S.D.N.Y. Mar. 21, 2006) ("the law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives").

Because this case is not filed in the District of Columbia and does not involve real property, a vessel or a cargo, or an agency or instrumentality of a foreign state, venue is proper only if "a

---

[3] A court may resolve venue prior to reaching FSIA jurisdiction.  *Luxexpress 2016 Corp.*, 2018 WL 1626143, at *3.

4

substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York.  28 U.S.C. § 1391(f)(1)-(4).  "Courts have required extensive events or omissions giving rise to a claim to occur in the forum in order for venue to be appropriate under the FSIA[.]"  *Tifa Ltd. v. Republic of Ghana*, 692 F. Supp. 393, 405 (D.N.J. 1988); *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 602, 609 (S.D.N.Y. 2016) ("the court must take seriously the adjective 'substantial'").  For venue to be proper, "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original).

Here, the above-named nineteen Plaintiffs identify no material acts or omissions occurring in the Southern District of New York.  Rather, the events underlying these Plaintiffs' claim – the sexual abuse – occurred in the Eastern District of New York (Bruno, Burns, Castiglione, Cavanaugh, Gillen, Agnello, Mondello, Jones, J. O'Connor, T. O'Connor, Senatore, Smith, B. Compasso, W. Compasso, Jockel, Russo, and Sexton) or the Northern District of New York (Hurn and Sparks).  FAC ¶¶ 5-6, 8-11, 13-18, 20-21, 23-27; *see also id.*, ¶¶ 35-36 (identifying the "LONG ISLAND DIOCESES SURVIVORS" and the "NORTHERN DIOCESES SURVIVORS").  As a result, venue does not lie in the Southern District of New York for these Plaintiffs.  *See Holloway*, 2021 WL 1791456, at *2-3 (in clergy sex abuse case against the Holy See, holding that "[t]he law is clear that venue in sexual abuse cases lies in the district where the abuse occurred" and finding venue improper where "no part of the events occurred in New York"); *see also*, *e.g.*, *Fisher v. Int'l Student Exch., Inc.*, 38 F. Supp. 3d 276, 285 (E.D.N.Y. 2014) (New York venue improper where the alleged sexual abuse of plaintiff "occurred in Montana"); *Chenevert v. Springer*, No. CIV.A.C-09-35, 2009 WL 2215115, at *2-3 (S.D. Tex. July 22, 2009) (in priest sexual abuse case, venue

not proper in the Southern District of Texas since "none of the [alleged] abuse" occurred in Texas).

When venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a). A case should not be transferred when that "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394-95 (2d Cir. 1992); *see also Feldman v. L & M Mowing, Inc.*, No. 98 CV 4246SJ, 1999 WL 284983, at *3 (E.D.N.Y. May 3, 1999) (even though "dismissal is a severe penalty," it is warranted when "none of the complaint's allegations support even a colorable argument for venue in this district").

The Complaint states that Plaintiffs' counsel "is experienced in group/class claims" and "has represented over 1,000 victims of sexual abuse in civil cases."  FAC ¶¶ 103-04.  Nonetheless, the Complaint cites the wrong venue provisions and the factual allegations do not support "even a colorable argument for venue" in the Southern District of New York for most of the Plaintiffs. Because the choice of venue demonstrates either lack of diligence or "forum shopping or some other form of gamesmanship," the Court should dismiss the case as to these nineteen Plaintiffs. *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 407-08 (S.D.N.Y. 2004); *see also Holloway*, 2021 WL 1791456, at *3-4 (dismissing for improper venue).

Dismissal is also proper because the above-named Plaintiffs filed identical claims against the Holy See on August 13, 2021, in the Eastern District of New York (Bruno, Burns, Castiglione, Cavanaugh, Gillen, Agnello, Mondello, Jones, J. O'Connor, T. O'Connor, Senatore, Smith, B. Compasso, W. Compasso, Jockel, Russo, and Sexton) and in the Northern District of New York (Hurn and Sparks).  *See Bruno* Complaint ¶¶ 1-113; *Hurn* Complaint ¶¶ 1-115.  Since Plaintiffs have already filed the same lawsuit in another district, and to avoid duplicative federal proceedings,

the Court should dismiss the action as to these nineteen Plaintiffs.  *See Banks v. Soo Song*, No. 2:17-CV-00277-DBH, 2017 WL 3283864, at *3 (D. Me. Aug. 2, 2017) (holding that "transfer would serve no purpose" and that "dismissal is appropriate" where the same action is already pending in another district); *Mantissa Corp. v. Great Am. Bancorp, Inc.*, 446 F. Supp. 3d 398, 406 (C.D. Ill. 2020) (holding that "transfer would be duplicative" where the party had already filed in another district based upon the same set of facts).

## II.   THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

Because no exception to foreign sovereign immunity applies, this Court should dismiss.

### A.   Foreign Sovereign Immunities Act

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state" in a United States court.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989); *see also* 28 U.S.C. § 1330(a)-(b).[4]  As a recognized foreign sovereign, the Holy See is presumptively immune from the jurisdiction of this Court unless one of the FSIA's exceptions to sovereign immunity applies.  *Fed. Republic of Ger. v. Philipp*, 141 S. Ct. 703, 709 (2021); 28 U.S.C. § 1604.  Because FSIA exceptions are in derogation of the common law, they must be narrowly construed.  *Haven v. Polska*, 215 F.3d 727, 731 (7th Cir. 2000).

### B.   The Tort Exception Does Not Confer Jurisdiction

Plaintiffs invoke only the tort exception to foreign sovereign immunity.  FAC ¶¶ 75-76.[5]

The FSIA's tort exception provides in relevant part that a foreign sovereign is not immune

---

[4] Since the FSIA provides the sole basis for jurisdiction, Plaintiffs' attempt to invoke the diversity jurisdiction statute (FAC ¶ 40) fails.  *See, e.g., Servaas Inc. v. Republic of Iraq*, 686 F. Supp. 2d 346, 349 n.2 (S.D.N.Y. 2010); *Gabay v. Mostazafan Found. of Iran*, 968 F. Supp. 895, 898 n. 2 (S.D.N.Y. 1997); *see also EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 647 (9th Cir. 2003) ("FSIA jurisdiction is its own special kind of federal jurisdiction and was intentionally divorced from diversity jurisdiction.").

[5] The Holy See's first motion to dismiss Plaintiffs' original complaint made this same observation.  Dkt. 27 at 7. Plaintiffs' subsequent amended complaint did not allege jurisdiction under any other FSIA exception.

in a case "in which money damages are sought against a foreign state for personal injury . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). The tort exception is subject to two broad exclusions restricting its application. First, the exception does not apply to "any claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 1605(a)(5)(B). Second, the exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A).

Since the tort exception was "designed primarily to remove immunity for cases arising from traffic accidents," it "should be narrowly construed so as not to encompass the farthest reaches of common law." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 116 n.8 (2d Cir. 2013) (stating that the FSIA's legislative history "supports the proposition that the noncommercial tort exception should apply to relatively few situations").

### 1. Any Alleged Tortious Conduct by Separate Entities in the United States Cannot Confer Jurisdiction Over the Holy See Under the Tort Exception

Notwithstanding that the New York Corporations are each separate legal entities (Haller Decl., Exhs. A-F), Plaintiffs claim that the corporations' conduct is attributable to the Holy See. FAC ¶¶ 43-58, 97, 108-09, 117-18, 126-27. Plaintiffs contend that attribution is warranted because the Holy See creates dioceses (FAC ¶ 50), appoints, ordains, transfers and removes bishops (*id.*, ¶¶ 51, 54, 58), receives funds from dioceses (*id.*, ¶¶ 48-49), requires bishops to submit reports and visit Rome every five years (*id.*, ¶ 56), and "promulgates and officially publishes rules, procedure and regulation that pertain to the investigation and response to reports of sexual abuse." *Id.*, ¶ 59. Plaintiffs further claim that the Pope is the "supreme administrator" of Church property and the

"supreme legislator of the Church." *Id.*, ¶¶ 52-53. The Complaint also alleges that bishops take an oath of "total fidelity to the Pope." *Id.*, ¶ 57.

Pursuant to the Ninth Circuit's holding in *Doe v. Holy See* with respect to similar allegations, any tortious conduct by separate corporations in the United States cannot be treated as an act or omission "of [the] foreign state" under section 1605(a)(5).

Under the FSIA, courts must treat corporate entities as presumptively separate from the foreign sovereign. *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 626-28 (1983); *see also Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 56 (2d Cir. 2021) (applying the "strong presumption" of independent status under *Bancec*). This presumption of separateness applies to both the jurisdictional and liability phases of a proceeding. *Doe*, 557 F.3d at 1079.

The presumption of separateness can only be overcome if "a corporate entity is so extensively controlled by the sovereign that the latter is effectively the agent of the former, or if recognizing the corporate entity as independent would work a fraud or injustice." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 252 (2d Cir. 2000); *see also Bancec*, 462 U.S. at 629. The "touchstone inquiry" under *Bancec* is "whether the sovereign state exercised significant and repeated control over the instrumentality's day-to-day operations." *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019); *see also Gater Assets Ltd.*, 2 F.4th at 55 (same).

In *Doe*, the Ninth Circuit addressed allegations analogous to Plaintiffs' here. *Doe*, 557 F.3d at 1070-71. Reviewing a facial challenge to jurisdiction under the FSIA, the *Doe* court held that the allegations were insufficient to overcome the presumption of separate corporate status and could not form the basis for jurisdiction over the Holy See under the tort exception:

> [The plaintiff's] complaint does not allege day-to-day, routine involvement of the
> Holy See in the affairs of the Archdiocese, the Order, and the Bishop. Instead, it

alleges that the Holy See "creates, divides[,] and re-aligns dioceses, archdioceses and ecclesiastical provinces" and "gives final approval to the creation, division or suppression of provinces of religious orders." [The plaintiff] also alleges that the Holy See "promulgates and enforces the laws and regulations regarding the education, training[,] and standards of conduct and discipline for its members and those who serve in the governmental, administrative, judicial, educational[,] and pastoral workings of the Catholic [C]hurch world-wide." These factual allegations – that the Holy See participated in creating the corporations and continues to promulgate laws and regulations that apply to them – are . . . insufficient to overcome the presumption of separate juridical status.

*Doe*, 557 F.3d at 1079-80; *see also*, *e.g.*, *EM Ltd. v. Banco Cent. De La Republica Arg.*, 800 F.3d 78, 95 (2d Cir. 2015) (holding that the *Bancec* test is not met where the "facts alleged do not establish" that the foreign state "exercised extensive control" over the separate entity's "day-to-day operations"); *Gater Assets Ltd.*, 2 F.4th at 56-59 (holding that regulation and appointment of board members is not enough to overcome the *Bancec* presumption); *TransAmerica Leasing, Inc. v. La Republica de Venez.*, 200 F.3d 843, 850-51 (D.C. Cir. 2000) (appointment of Board of Directors, Chairman of the Board and President insufficient); *cf. U.S. v. Bestfoods*, 524 U.S. 51, 72 (1998) (normal involvement of parent corporation includes "monitoring of the subsidiary's performance" and "articulation of general policies and procedures").[6]

This Court should follow *Doe* – a case fully consistent with Second Circuit precedent – and hold that acts or omissions of the New York Corporations in the United States are not attributable to the Holy See under the FSIA's tort exception. *See Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation*, 730 F.2d 195, 203 (5th Cir. 1984) ("[I]t is highly desirable to avoid circuit conflicts in the sensitive area of sovereign immunity.").

---

[6] Plaintiffs' allegation that the Holy See had "substantial involvement in, and the unqualified right to, control the day-to-day business and operations" of dioceses by bishops (FAC ¶ 47) is "nothing more" than a "conclusion[] routinely found to be insufficient under *Iqbal*." *De Quan Lu v. Red Koi, Inc.*, No. 17-CV-7291 (VEC), 2020 WL 7711410, at *3 (S.D.N.Y. Dec. 29, 2020). The same holds true of the Amended Complaint's new, conclusory allegation that the Holy See and the dioceses constitute a "single enterprise." FAC ¶ 47; *see*, *e.g.*, *Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016); *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, No. C 12-3103 SI, 2012 WL 4097711, at *3 (N.D. Cal. Sept. 17, 2012).

**2.      Any Alleged Tortious Conduct by "Agents" Cannot Confer Jurisdiction Under the Tort Exception**

Plaintiffs seek to hold the Holy See liable for the alleged tortious conduct of "agents." FAC ¶¶ 44, 47-48, 97.   Even assuming Plaintiffs could overcome the *Bancec* presumption of separateness, section 1605(a)(5) still does not confer jurisdiction over such a claim.

The tort exception's plain language extends only to tortious conduct either by the "foreign state" or its "official or employee."  28 U.S.C. § 1605(a)(5).  By its unambiguous terms, section 1605(a)(5) does not extend jurisdiction to tortious acts or omissions by mere "agents," a legislative determination that courts must respect.  *See Amerada Hess Shipping Corp.*, 488 U.S. at 433 (discussing "the settled proposition" that subject matter jurisdiction "is determined by Congress in the exact degrees and character which to Congress may seem proper for the public good").

This conclusion becomes inescapable when the tort exception's language is compared with the broader language found in the terrorism exception, which applies to acts by "an official, employee, *or agent*" of a foreign state.  28 U.S.C. § 1605A(a)(1), (c).  As the Supreme Court has stated with respect to the FSIA, "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019).  The presumption is especially strong here given other similarities between the tort exception and the terrorism exception.  *Compare* 28 U.S.C. § 1605(a)(5) ("any official or employee" acting "within the scope of his office or employment") *with* 28 U.S.C. § 1605A(a)(1) ("an official, employee, or agent" acting "within the scope of his or her office, employment, or agency"); *see also*, *e.g.*, *U.S. v. Tyson Foods, Inc.*, 258 F. Supp. 2d 809, 815 (E.D. Tenn. 2003) (holding that the "presumption is strong" where the two sections have a similar structure and are in "immediate proximity to each other").  The Supreme Court has explained that the fact that 28 U.S.C. section 1605A(c) creates "a cause of action against both the 'foreign state'

11

and 'any official, employee, or agent' thereof . . .  reinforces the idea that 'foreign state' does not by definition include foreign officials."  *Samantar v. Yousuf*, 560 U.S. 305, 318 n.11 (2010). Applying the same reasoning under the tort exception, section 1605A(c) further reinforces the conclusion that section 1605(a)(5)'s use of the term "foreign state" was not intended to include "agents."

In sum, the Court should reject Plaintiffs' attempt to assert jurisdiction under the tort exception based upon the conduct of alleged "agents" of the Holy See.

### 3.    Contrary to Plaintiffs' Allegation, Diocesan Bishops are Not Holy See "Officials" as a Matter of Law

Plaintiffs' Complaint conclusorily alleges that bishops in charge of the New York Corporations were Holy See "officials."  FAC ¶ 76.  This bald assertion is insufficient under *Iqbal*. *Iqbal*, 556 U.S. at 678-80.  It also fails as a matter of Holy See law.

The FSIA's tort exception does not define the term "official."  28 U.S.C. § 1605(a)(5). However, it is the foreign sovereign itself that holds the authority to determine who qualifies as its "official."  *See*, *e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign."); *Black's Law Dictionary* (defining "official" as "[s]omeone who holds or is invested with a public office" or "a person elected or appointed to carry out some portion of a government's sovereign powers"); *see also* 18 U.S.C. § 1116(b)(3)(B) (for purposes of federal criminal law, recognizing that a "foreign official" includes those "duly notified" as such by the foreign government); 18 U.S.C. § 112(c) (adopting same approach); 18 U.S.C. § 970(c) (same). Just as the United States – and not a foreign court – determines who qualifies as an "official" of the United States government, a United States court should respect a foreign state's prerogative to determine who is an "official" of its own government.  *See Republic of Philippines v. Pimentel*,

553 U.S. 851, 866 (2008) (explaining that foreign sovereign immunity derives from "fair dealing, reciprocal self-interest, and respect for the 'power and dignity' of the foreign sovereign"); *see also Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1088-89 (9th Cir. 2018) (recognizing that the determination of whether a person acts with the "actual authority" of a foreign state is an issue of foreign law).

During the relevant period, Holy See law carefully defined who qualified as an "official" of the Holy See.  As explained by Professor Andrea Bettetini, the classes and grades of Holy See officials "were highly regimented."  Bettetini Decl. ¶ 26; s*ee also id.*, ¶¶ 20-29 (explaining the rules applicable to Holy See officials under the general regulations of the Roman Curia); *Regolamento Generale della Curia Romana* (*Secretaria Status*, *Rescriptum*) (1968) (translation attached as Exhibit B to the Bettetini Decl.), arts. 2-3, 6-7, 9, 13-14, 22-25, 39-40, 42, 48-70, 75-84, 91-93.  "This regimentation helped maintain controls in centralized fashion as to the duties and responsibilities of each and every official working in the Roman Curia's various congregations, offices and tribunals."  Bettetini Decl. ¶ 26.  "It also allowed identification of the persons who, by office and rank, were authorized to execute various acts and documents."  *Id.*

The provisions of the Holy See regulations applicable to officials did not apply to diocesan bishops. Bettetini Decl. ¶ 30.  "Indeed, service as a diocesan bishop was, during the relevant period (and today), considered incompatible with service as an official of the Roman Curia."  *Id.* Professor Bettetini explains that "[a] diocesan bishop was the top official in his *diocesan* curia, which was legally distinct from the *Roman* Curia."  *Id.* (emphasis in original).  Based upon the applicable foreign law, Professor Bettetini concludes that "[w]ith respect to governance within their dioceses, including with regard to decisions relating to individual priests, diocesan bishops in the United States and elsewhere were not Holy See 'officials' as a matter of Holy See law."  *Id.*;

*see also Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018) ("In the spirit of international comity, a federal court should carefully consider a foreign state's views about the meaning of its own laws.").

In sum, Plaintiffs' assertion that the bishops in charge of the New York Corporations were Holy See "officials" fails both under *Iqbal* and under Holy See law.

### 4. Under the Doctrine of Limited Liability, Plaintiffs' Employment Theory Cannot Sustain Jurisdiction Under the Tort Exception

The tort exception does not apply because Plaintiffs fail to allege tortious conduct by an "employee" of the Holy See.  28 U.S.C. § 1605(a)(5).

Plaintiffs allege that the bishops were "at all relevant times employees of the Holy See under New York law and general common law" for purposes of the tort exception.  FAC ¶ 76. Elsewhere in the Complaint, Plaintiffs allege that a diocese was "operated by [a] bishop," who had the authority to "legislate within the territory of a Diocese" and who was "the superior of all Priests and other clergy assigned to work within his Diocese."  *Id.*, ¶¶ 46, 52, 58.

Under the doctrine of limited liability, and regarding conduct occurring within a diocese, the bishop must be presumed to act on behalf of his diocese, not on behalf of the Holy See. *Bestfoods*, 524 U.S. at 69-70; *see also id.* at 69 ("[C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary").[7] Because Plaintiffs have not alleged facts to overcome the *Bestfoods* presumption, that presumption bars the imputation of a bishop's conduct to the Holy See.  *See, e.g., Fried v. LVI Servs., Inc.*, No. 10 CIV. 9308 JSR, 2011 WL 2119748, at *5-*6 (S.D.N.Y. May 23, 2011).

The *Bestfoods* presumption applies with particular force here for three independent

---

[7] The presumption is necessary to avoid the doctrine of respondeat superior being "used as means of circumventing clear limitations imposed by . . . corporate law."  *USAirways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 494 (S.D.N.Y. 1997).

reasons.  First, this case directly implicates the rule of limited liability under *Bancec*, which gives rise to important comity and foreign relations concerns not present in a run-of-the-mill corporation case.  *Bancec*, 462 U.S. at 626-28.  Second, even under the Complaint itself, the relationship between the Holy See and local corporate entities in the U.S. is far more attenuated than that which exists in a typical parent-subsidiary relationship.  *See*, *e.g.*, FAC ¶ 56 (acknowledging that bishops are only required to visit Rome and provide a report every *five years*).  Third, because the FSIA's tort exception forms part of a jurisdictional statute, the term "employee" as used in section 1605(a)(5) must be narrowly construed.  *See supra* at 7-8.

In short, under the rule of limited liability, Plaintiffs' employment theory fails.

### 5. Even Leaving Aside the Doctrine of Limited Liability, Plaintiffs Do Not Sufficiently Allege that Any Holy See Employee Committed Tortious Conduct in the United States

#### a. This Court Should Apply Federal Common Law with Regard to Employment

In accordance with Second Circuit law decided in analogous contexts, this Court should apply federal common law with respect to the issue of employment status under the tort exception.

The FSIA's tort exception uses the term "employee" without further definition.  28 U.S.C. § 1605(a)(5).  "[I]t is well established that when Congress uses the term 'employee' without defining it with precision, courts should presume that Congress had in mind the conventional master-servant relationship as understood by the common-law agency doctrine."  *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997).  This rule "reflects the fact that federal statutes are generally intended to have uniform nationwide application."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989).

Application of federal common law to FSIA tort exception cases is consistent with Federal Tort Claims Act (FTCA) precedent.  Section 1605(a)(5) was drafted based on the FTCA.  H.R.

Rep. No. 94-1487, at 21.  Whereas FTCA cases apply state law for the scope-of-employment issue under 28 U.S.C. section 1346(b) (*Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016)), courts apply federal law for the purposes of determining whether a person is a government employee. *Courtney v. U.S.*, 230 F.2d 112, 114 (2d Cir. 1956), *disapproved of on other grounds by Maryland for Use of Levin v. U.S.*, 381 U.S. 41 (1965).  Given that the FSIA's tort exception is based upon the FTCA, Congress is presumed to have intended that a similar rule apply under the FSIA. *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978).  Accordingly, federal common law should apply to determine whether an individual is an employee of the foreign state.

This result is also countenanced by the policy underlying the FSIA, which strongly favors the creation of a uniform body of law applicable to foreign states.  *See, e.g.*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983) (discussing "the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area").  That is particularly vital with respect to the core question of who is an "employee" of a foreign state, since that issue demands uniformity irrespective of state boundaries.  *Gregory*, 501 U.S. at 460.  The Court should apply federal common law.[8]

> ### b.  Plaintiffs' Employment Allegations are Insufficient Whether Analyzed Under Federal Common Law or New York State Law

Whether applying federal common law or New York State law, Plaintiffs' employment

---

[8] Relying upon 28 U.S.C. section 1606 and *Bancec*, 462 U.S. at 622 n.11, the Ninth Circuit reached a different result in *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 325 (9th Cir. 1996).  Neither section 1606 nor *Bancec* supports applying state law to an employee status determination related to immunity.  By its plain terms, section 1606 only applies *after* a court has established jurisdiction over a foreign state.  *See* 28 U.S.C. § 1606 ("*[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter*, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances").  Moreover, in the cited footnote, *Bancec* in fact *declined* to apply New York law to the attribution issue with respect to foreign states, noting that "[w]hen it enacted the FSIA, Congress expressly acknowledged 'the importance of developing a uniform body of law' concerning the amenability of a foreign sovereign to suit in United States courts." *Bancec*, 462 U.S. at 622 n.11; *see also id.* (stating that "matters bearing on the nation's foreign relations should not be left to divergent and perhaps parochial state interpretations").

allegations are insufficient as a matter of law.

The Complaint never alleges facts showing that the Holy See exercised day-to-day control over any bishop working for the New York Corporations. *See*, *e.g.*, *U.S. v. Orleans*, 425 U.S. 807, 815 (1976) (holding that employment status turns on whether putative employer supervises the "day-to-day operations" of the relevant personnel); *Logue v. U.S.*, 412 U.S. 521, 529-30 (1973) (same); *Leone v. U.S.*, 910 F.2d 46, 49-50 (2d Cir. 1990) (holding that "detailed regulations and evaluations" are insufficient to show employment where the government did not undertake "day-to-day management" of putative employees). Nor do Plaintiffs allege that the Holy See provided instrumentalities or tools for the work; owned the location of the work; had discretion over when and how long any bishop would work on a given day; hired or paid for assistants; paid bishops' salaries or provided employee benefits; or treated bishops as employees for tax purposes. *See Reid*, 490 U.S. at 751-52; *O'Connor*, 126 F.3d at 115-16 (holding that compensation from the putative employer "is an essential condition to the existence of an employer-employee relationship"); *see also Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003). Moreover, the skill required to serve as a bishop is high, and the Holy See, a foreign sovereign, is not "in business." *Reid*, 490 U.S. at 751-52.

Because Plaintiffs' employment allegations fail, the tort exception does not apply.

### 6.    Any Alleged Tortious Conduct by the Holy See Cannot Confer Jurisdiction Under the Tort Exception

The tort exception does not confer jurisdiction based upon the Holy See's alleged conduct.

### a.    The Tort Exception Does Not Confer Jurisdiction Because Any Alleged Holy See Conduct Did Not Occur Entirely in the United States

Because Plaintiffs' claim is based at least in part on the Holy See's own conduct occurring overseas (FAC ¶¶ 61-68, 110-13, 119-22, 129-31), the tort exception does not confer jurisdiction.

Section 1605(a)(5) "covers only torts occurring within the territorial jurisdiction of the United States." *Amerada Hess Shipping Co.*, 488 U.S. at 441; *see also Philipp*, 141 S. Ct. at 714. Under the Second Circuit's "'entire tort' rule" (*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 115-16), each portion of the plaintiff's claim must be committed in the United States. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 427-28 (S.D.N.Y. 2019); *see also, e.g.*, *Doe v. Fed. Dem. Republic of Ethiopia*, 851 F.3d 7, 10-11 (D.C. Cir. 2017).

Because the tort exception requires that the "entire tort" occur within the United States, jurisdiction cannot be based upon the alleged tortious conduct of the Holy See:

> [A]ny portion of plaintiffs' claims that relies upon acts committed by the Holy See abroad cannot survive.  For example, the tortious act exception to the FSIA's grant of immunity would not include any theory of liability premised on the Holy See's own negligent supervision because such acts presumably occurred abroad; moreover, a direct claim leveled against the Holy See for promulgating the 1962 Policy would not fall within the tortious act exception because it too presumably occurred abroad. In turn, plaintiffs cannot pursue claims . . . based upon the acts of the Holy See that occurred abroad.

*O'Bryan*, 556 F.3d at 385-86; *see also English*, 676 F. Supp. at 764 (holding the tort exception inapplicable in clergy sexual abuse case against the Vatican because "any of the alleged acts or omissions by the Vatican would not have occurred within the jurisdiction of the United States, but rather within the confines of the Vatican"); *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (holding in the context of a failure to warn claim that "the omissions cannot reasonably be said to have occurred within the United States").[9]

Attempting to stave off dismissal under the entire tort rule, Plaintiffs' amended complaint now alleges that "[t]he mandatory secrecy policy of the Holy See was established, implemented and enforced entirely in the United States through the Holy See's agents and employees, the

---

[9] The alleged "1962 Policy" referenced in *O'Bryan* is also central to the Amended Complaint.  FAC ¶¶ 65-68.

18

Bishops." FAC ¶ 75. This allegation, which recycles Plaintiffs' meritless attribution theories (*supra* at 8-17), is conclusory and not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. The allegation also fails as a matter of common sense. *See id.* (court reviewing a complaint must "draw on its judicial experience and common sense"). *Crimen* was "established" in Rome, where the Holy See was located, and not in the United States. *See Crimen* at 11 ("Given in Rome, from the Office of the Sacred Congregation, 16 March 1962"); *see also O'Bryan*, 556 F.3d at 385.

Because any claim based upon Holy See conduct – including its alleged promulgation of a "secrecy policy" (FAC ¶¶ 61-68) – would have occurred at least in part outside the U.S., the tort exception cannot confer jurisdiction. *In re Terr. Attacks on Sept. 11, 2001*, 714 F.3d at 115-16.

> **b.   The Tort Exception Does Not Confer Jurisdiction Because Plaintiffs Fail to Allege Any Facts Showing that Their Injuries Were Caused by the Holy See's Tortious Conduct**

Since Plaintiffs fail to allege facts showing that their injuries were caused by the Holy See's tortious conduct, the FSIA's tort exception does not confer jurisdiction.

The tort exception can only confer jurisdiction if Plaintiffs' injuries were "caused by the tortious act or omission" of the Holy See. 28 U.S.C. § 1605(a)(5). State law determines whether this requirement is met. *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010).

While relying on the Holy See's "release[]" of *Crimen* in 1922 and 1962 (FAC ¶¶ 64-68), Plaintiffs fail to identify any causal link between *Crimen* and their injuries. For instance, Plaintiffs do not allege that the clerics who abused them were ever subject to the procedure set forth in *Crimen*, including its confidentiality provisions. FAC, *passim*; *Crimen*, ¶¶ 4-7, 10-13, 15-65.[10] Plaintiffs' vague and conclusory speculation that the Holy See's "policy of strict secrecy" was a

---

[10] Nor is *Crimen*'s requirement of confidentiality in criminal matters itself "tortious." Applying the "Golden Rule" under international law (*de Sanchez v. Banco Cent. De Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985)), no case could be brought against the United States for its promulgation of Rule 6(e)(2)(B) of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 6(e)(2)(B) (imposing "secrecy" on persons involved in grand jury proceedings).

"substantial factor" in "causing the clergy sexual abuse of Plaintiffs" (FAC ¶¶ 112-13, 121-22, 130-31) does not even come close to satisfying section 1605(a)(5)'s requirement that the foreign state's conduct "caused" the Plaintiffs' injury. *Robinson*, 269 F.3d at 146; 28 U.S.C. § 1605(a)(5); *see also Iqbal*, 556 U.S. at 678-79.[11]   The Complaint also alleges no facts showing that the Holy See had a duty of care or prior knowledge that the clerics posed a danger to minors – or any facts suggesting that the Holy See even knew of the clerics' existence – and thereby fails to show any "tortious" conduct by the Holy See or even by the bishops in the United States. *Paul J.H. v. Lum*, 736 N.Y.S.2d 561, 562-63 (App. Div. 2002); *see also infra* at 29-34.

Because Plaintiffs allege no facts that satisfy section 1605(a)(5)'s causation and tortious conduct requirements, the tort exception does not confer jurisdiction.

### 7. The Misrepresentation Exclusion to the Tort Exception Independently Precludes Jurisdiction Over Plaintiffs' Negligence Claim

The misrepresentation exclusion independently prohibits jurisdiction over Plaintiffs' negligence claim.

The tort exception precludes jurisdiction over "any claims arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 1605(a)(5)(B).   The FSIA's misrepresentation exclusion is modeled on the FTCA. *Compare* 28 U.S.C. § 1605(a)(5)(B) *with* 28 U.S.C. § 2680(h). The exclusion "is broadly construed." *Maryland Cas. Co. v. U.S.*, No. C 05-02558 JSW, 2006 WL 563046, at *9 (N.D. Cal. Mar. 6, 2006).

The misrepresentation exclusion "encompasses claims arising out of negligent, as well as willful, misrepresentation." *Janowsky v. U.S.*, 913 F.2d 393, 396 (7th Cir. 1990); *see also U.S. v. Neustadt*, 366 U.S. 696, 702 (1961).   Moreover, the exclusion "bars not only claims of negligence

---

[11] This is especially true given the lack of any allegation that the clerics at issue had engaged in previous misconduct, since a "secrecy policy" could not have had an impact absent a prior act to keep "secret."

in the misrepresentation, but in the conduct underlying the misrepresentation." *Dorking Genetics v. U.S.*, 76 F.3d 1261, 1264 (2d Cir. 1996).

In determining whether a plaintiff's claims are barred by the misrepresentation exclusion, courts must look to the "gravamen" of the claim. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012-13 (7th Cir. 1991); *see also*, *e.g.*, *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999) (rejecting a plaintiff's "effort to plead around the proviso of subsection (a)(5)(B)"); *JBP Acquisitions LP v. U.S. ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000) (holding that a court should examine the "essence" of a claim). "[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296 (1983).

It is well-settled that the misrepresentation exclusion bars claims based upon the failure to warn or communicate. *See*, *e.g.*, *Neustadt*, 366 U.S. at 701-07 (rejecting failure to warn claim under FTCA misrepresentation exclusion); *Doe*, 557 F.3d at 1084 n.10 ("The misrepresentation exclusion covers both acts of affirmative misrepresentation and failure to warn."); *Muniz-Rivera v. U.S.*, 326 F.3d 8, 13 (1st Cir. 2003) ("The case law makes manifest that the prophylaxis of the misrepresentation exception extends to failures of communication."); *JBP Acquisitions LP*, 224 F.3d at 1266 (holding that "failure to communicate . . . is encompassed by the misrepresentation exception"); *City & Cty. of San Francisco v. U.S.*, 615 F.2d 498, 504-05 (9th Cir. 1980) (holding that the "negligent failure to inform" falls within the meaning of the misrepresentation exclusion); *Redmond v. U.S. By & Through Sec. & Exch. Comm'n of U.S.*, 518 F.2d 811, 814-16 (7th Cir. 1975) (rejecting failure to warn claim under FTCA's misrepresentation exclusion).

Here, all of the Plaintiffs bring the identical negligence claim predicated on a failure to warn, disclose or report. FAC ¶¶ 107-33. The Complaint's theory is based entirely on allegations

of "secrecy and concealment."  FAC ¶ 2; *see also id.*, ¶¶ 64-68, 74-75 (alleging a "mandatory secrecy policy" by the Holy See).  Plaintiffs claim that the Holy See breached a duty of care "by instituting a policy of strict secrecy" that prevented bishops from "warning," "disclosing" and "reporting" about child sexual abuse, resulting in their injuries.  FAC ¶¶ 112-13, 121-22, 130-31.

Given Plaintiffs' own allegations, the Complaint's negligence claim clearly arises out of misrepresentation and deceit under established law.  *Neustadt*, 366 U.S. at 701-07; *Doe*, 557 F.3d at 1084 n.10; *Muniz-Rivera*, 326 F.3d at 13; *Redmond*, 518 F.2d at 814-16; *see also Boda v. U.S.*, 698 F.2d 1174, 1175-76 (11th Cir. 1983) (holding that claim of failure to warn of an individual's criminal propensities fell within the FTCA misrepresentation exclusion and stating that "this question was resolved by the Supreme Court in [*Neustadt*]").  As a result, under section 1605(a)(5)(B), the tort exception cannot confer jurisdiction.  *See Doe*, 557 F.3d at 1084 n.10 (holding, in sexual abuse case, that "failure to warn" claim against the Holy See was barred under section 1605(a)(5)(B)); *Lawrence v. U.S.*, 340 F.3d 952, 958 (9th Cir. 2003) (similar claims barred under FTCA's misrepresentation exception).

### 8. The Discretionary Function Exclusion to the Tort Exception Independently Precludes Jurisdiction Over Plaintiffs' Negligence Claim

The tort exception's discretionary function exclusion (DFE) bars Plaintiffs' claim.

#### a. Legal Standard

The tort exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  Courts look to interpretations of the discretionary function exception under the FTCA in determining the scope of the FSIA's discretionary function exclusion.  *Doe*, 557 F.3d at 1083.  "Plaintiffs bear the initial burden to state a claim that is not barred by the DFE."  *Molchatsky v. U.S.*, 713 F.3d 159, 162 (2d Cir. 2013).

Application of the DFE is determined by a two-part test.  First, the DFE "covers only acts that are discretionary in nature, acts that involv[e] an element of judgment or choice."  *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991).  Under this part, a plaintiff "must show that [the sovereign's] employees violated a . . . statute, regulation, or policy that is both specific and mandatory."  *Elder v. U.S.*, 312 F.3d 1172, 1177 (10th Cir. 2002); *see also Gaubert*, 499 U.S. at 324.

Second, if a defendant's conduct is discretionary under the first prong, "it remains to be decided whether that judgment is of the kind that the [DFE] was designed to shield."  *Gaubert*, 499 U.S. at 322-23.  "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . the [DFE] protects only governmental actions and decisions based on considerations of public policy."  *Id.* at 323.  When a court determines that the relevant actions were subject to discretion, "a strong presumption arises that the . . . actions were grounded in policy considerations."  *Nieves Martinez v. U.S.*, 997 F.3d 867, 881 (9th Cir. 2021).

        **b.**    **The DFE's First Prong is Met Because the Complaint Fails to Allege that the Challenged Conduct Did Not Involve Any Element of Judgment, Choice, or Discretion**

With regard to the DFE's first prong, the Complaint nowhere alleges that the Holy See, or its putative employees, violated a Holy See law requiring that Plaintiffs be warned of a cleric's dangerous propensities.  *Cf. Elder*, 312 F.3d at 1177 (holding that a plaintiff must show violation of a statute, regulation or policy); *Risk v. Halvorsen*, 936 F.2d 393, 396 (9th Cir. 1991) (applying DFE where there was "no assertion that the Norwegian officials violated any Norwegian law").

In fact, Plaintiffs' express theory is that the failure to warn, disclose or report about sexual abuse by clerics *accorded with* the Holy See's norms.  *See* FAC ¶¶ 77-78; *see also id.*, ¶¶ 64-68, 109, 112, 118, 121, 127, 130.  However, a putative agent's compliance with a sovereign's regulation or policy is *protected* by the DFE.  In *Gaubert*, the Supreme Court made clear that "if

23

a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324. Indeed, if the rule were otherwise, the United States government itself would be subject to suit under the FTCA for the promulgation of laws and regulations later obeyed by its employees. That is not the law. *See id.* at 323 ("there is no doubt" that the "promulgation of regulations" is protected by the DFE); *Molchatsky*, 713 F.3d at 162 (DFE reflects the sovereign's "right to act without liability for misjudgment and carelessness in the formulation of policy"); *Pornomo v. U.S.*, 814 F.3d 681, 690 (4th Cir. 2016) (promulgation of a regulation is "itself a discretionary act"); *Rosas v. Brock*, 826 F.2d 1004, 1009 (11th Cir. 1987) (promulgation of a rule "is exactly the sort of exercise of discretion that Congress intended to insulate from judicial review").

Moreover, even assuming *arguendo* that compliance with procedural norms could prevent application of the DFE's first prong, the Complaint nowhere alleges that *Crimen* – including its confidentiality provisions – was ever applied to any of the clerics alleged to have harmed Plaintiffs. *See Crimen*, ¶¶ 4-7, 10-13, 15-65 (setting forth investigatory, trial and post-trial procedures, with focus on the crime of solicitation in the confessional); FAC, *passim* (no allegation that *Crimen* was applied with regard to the named clerics). *Crimen* is therefore irrelevant to whether the alleged decision not to warn Plaintiffs involved an element of judgment, choice, or discretion.

Plaintiffs conclusorily allege that the "strict secrecy mandate" was contrary to New York's child abuse reporting law. FAC ¶ 72. However, even assuming *arguendo* what the Complaint never alleges – that the Holy See or bishops had prior knowledge of abuse by the alleged priests or deacons – New York law did not require the Holy See or bishops to report at the time. *See infra* at 31-33. In any event, the issue under the DFE's first prong is whether the Holy See violated its

*own law.  See Risk*, 936 F.2d at 396; *see also Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 591-92 (9th Cir. 2020).

Because the Complaint nowhere alleges that the decision not to "warn about [the clerics'] proclivities involved no element of judgment, choice, or discretion," the first prong of the discretionary function exclusion is met.  *Doe*, 557 F.3d at 1084; *see also Hinsley v. Standing Rock Child Prot. Servs.*, 516 F.3d 668, 673 (8th Cir. 2008) (DFE's first prong satisfied where there is "no statute, policy, or regulation mandating [CPS] to warn the public or a third party about the sexually abusive proclivities of a person who is being discharged from the CPS"); *Hekmat v. U.S. Transportation Sec. Admin.*, 247 F. Supp. 3d 427, 437 (S.D.N.Y. 2017) (decision as to whether to warn about dangers of theft by TSA employees was discretionary); *Clarke v. U.S.*, 107 F. Supp. 3d 238, 246-48 (E.D.N.Y. 2015) (failure to warn victim of release of dangerous person involved a discretionary function); *Rosebush v. U.S.*, 119 F.3d 438, 443 (6th Cir. 1997) ("[T]he decision whether to warn of potential danger is a protected discretionary function.").

> ### c.   The DFE's Second Prong is Met Because the Alleged Conduct Involved the Type of Discretionary Judgments that the Exclusion was Designed to Protect

The DFE's second prong is also met.  Courts have repeatedly held that the decision of "whether to warn about [an individual's] dangerous proclivities . . . [is] the type of discretionary judgment[] that the exclusion was designed to protect."  *Doe*, 557 F.3d at 1084; *see also*, *e.g.*, *Croyle by & through Croyle v. U.S.*, 908 F.3d 377, 381 (8th Cir. 2018) (relying on *Doe* and holding, in FTCA clergy sexual abuse case, that "[t]he decision whether to warn of [the priest's] sexual propensities or to take other action to restrict his contact with children is susceptible to policy analysis").  As the Ninth Circuit explained in *Doe*:

> The Holy See's failure to present any evidence that its actions were actually based on policy considerations is not relevant to whether the discretionary function exception applies.  A foreign state's decision need not actually be grounded in

> policy considerations so long as it is, by its nature[,] susceptible to a policy analysis. A policy analysis is one that implements political, social, and economic judgments. In the case of [the priest's] alleged abuse, the Holy See might have decided to retain him and not to warn his parishioners because it felt that to do otherwise would have harmed the Church's reputation locally, or because it felt that pastoral stability was sufficiently important for the parishioners' well-being, or because low ordination rates or staffing shortages made it necessary to keep [the priest] on. That such social, economic, or political policy considerations could have influenced the decision renders it the kind of judgment that the discretionary function exception was designed to shield.

*Doe*, 557 F.3d at 1085; *see also Croyle*, 908 F.3d at 382 ("Balancing safety, reputational interests, and confidentiality is the kind of determination the discretionary function exception was designed to shield."); *Hinsley*, 516 F.3d at 673 (decision to release child abuser into a family without warning meets requirements of second part of DFE test); *Lawrence*, 340 F.3d at 958 (DFE applies to government's failure to provide complete information regarding child abuser); *Simmons v. U.S.*, 764 F. App'x 98, 100 (2d Cir. 2019) (failure to warn security guards of the threat posed by disgruntled former Department of Labor employee was "susceptible to policy analysis" and was covered by the DFE); *In re Joint E. & S. Districts Asbestos Litig.*, 891 F.2d 31, 38 (2d Cir. 1989) (holding that "the government's failure to adopt a safety program to warn of asbestos-related dangers on board ships in the midst of World War II is covered by the discretionary function exception"); *Brown v. U.S.*, 661 F. Supp. 2d 341, 363 (E.D.N.Y. 2009) (decision of whether and where to post warning signs at the beach "typifies the type of decisions that form the basis for the discretionary function exception"); *Hekmat*, 247 F. Supp. 3d at 437 (decision about whether to warn about dangers posed by TSA employees were "grounded in considerations of public policy").

Thus, any alleged decision by the Holy See – or its putative employees – regarding whether to warn or report falls squarely within the discretionary function exclusion. As a result, section 1605(a)(5)(A) precludes Plaintiffs' attempt to invoke jurisdiction under the tort exception.

Because the tort exception does not apply, the Court should dismiss.

9.     **Plaintiffs' Jury Trial and Punitive Damages Requests Should be Stricken**

Plaintiffs' requests for a jury trial and punitive damages (FAC at 35-36) must be stricken since both are statutorily barred against a foreign sovereign.  *See* 28 U.S.C. § 1330(a) (providing for jurisdiction only over a "nonjury civil action against a foreign state"); 28 U.S.C. § 1606 ("a foreign state . . . shall not be liable for punitive damages").

## III.     THE COURT SHOULD DISMISS FOR LACK OF STANDING

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish the "irreducible constitutional minimum" for standing, the plaintiff's injury must be, *inter alia*, fairly traceable to the defendant's conduct.  *Id*.

The party invoking jurisdiction has the burden of establishing standing.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  At the pleading stage, a plaintiff must "clearly . . . allege facts" demonstrating all standing elements.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Because they allege no facts linking the Holy See's conduct to their abuse, Plaintiffs fail to meet the traceability prong for constitutional standing.  Plaintiffs never allege facts showing that the Holy See took any actions regarding the clerics at issue or that the Holy See even knew of the clerics' existence, much less that the Holy See had prior knowledge that any of the clerics posed a danger to minors.  *See Spokeo, Inc.*, 136 S. Ct. at 1547 (injuries must be "fairly traceable to the challenged conduct *of the defendant*"); *see also Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976) (injury cannot be the result of "independent action of some third party not before the court").  While Plaintiffs conclusorily allege that they were harmed by the Holy See's so-called "secrecy policy" (FAC ¶¶ 110-13, 119-22, 128-31), they never allege facts linking their injuries to *Crimen*.  FAC, *passim*.  Plaintiffs' speculative and formulaic allegations are insufficient to meet

the traceability requirement.  *See Simon*, 426 U.S. at 42-45 (holding that "speculative inferences" are insufficient to meet the traceability element of standing); *Ctr. for L. and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (injury not "fairly traceable" to party's conduct where "the connection between the beginning and end of the purported chain" is "so attenuated"); *Iqbal*, 556 U.S. at 678-79.

Because Plaintiffs allege no facts that demonstrate the "*de facto* causality" required for standing (*Dep't of Com. v. N.Y.*, 139 S. Ct. 2551, 2566 (2019)), the Court should dismiss.

## IV.   THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

Because the Complaint fails to state a claim, this case should be dismissed.

### A.   Plaintiffs' Claim Fails as a Matter of Law

#### 1.   Plaintiffs' Vicarious Liability Theories Fail

Plaintiffs' vicarious liability theories – the attribution of the New York Corporations' conduct to the Holy See and the allegations regarding official and employee status – fail for the reasons stated above.  *See supra* at 8-17.

In addition, Plaintiffs' reliance on interpretations of religious doctrine, religious beliefs and canon law to demonstrate an "agency relationship" is barred by the Establishment Clause, the Free Exercise Clause, and the common law.  FAC at 13; *see also id.*, ¶ 57 (relying on religious "Oath of Fidelity"); *id.*, ¶ 47 (referring to the Holy See's "unqualified right" to control bishops' activities and its "right of complete domination of the Bishops and Dioceses"); *see also Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709-10 (1976) (judicial resolution of religious law and doctrine violates the First Amendment); *Watson v. Jones*, 80 U.S. 679, 733-34 (1872); *Alford v. U.S.*, 116 F.3d 334, 339 (8th Cir. 1997) ("The doctrinal and disciplinary control exercised by the [national and state-wide church] . . . is guided by religious conviction and religious law, not by employment relationships, and . . . should be considered impermissible or immaterial in

determining the employment status of a religious minister.").

Because Plaintiffs' vicarious liability theories fail as a matter of law, the remainder of this brief focuses primarily on Plaintiffs' direct liability claim.

### 2.      Plaintiffs' Negligence Claim Fails

Plaintiffs each make the same negligence claim.  FAC ¶¶ 107-33.  A negligence claim requires a duty of care, a breach of that duty, and an injury caused by the breach.  *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015).  Plaintiffs' negligence claim fails.

The Complaint fails to establish that the Holy See owed a duty of care to protect Plaintiffs from harm by third parties.  Under New York law, such a duty depends on the existence of a special relationship "between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others."  *Purdy v. Pub. Adm'r of Westchester Cty.*, 72 N.Y.2d 1, 8 (1988);  *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987).  Plaintiffs assert that they were owed a duty of protection because they were in special relationships with the Holy See, dioceses, and bishops (FAC ¶¶ 108, 117, 126), but the Complaint fails to identify any special relationships recognized under New York law.  *See Purdy*, 72 N.Y.2d at 8 (noting special relationships between masters and servants, parents and children, and common carriers and passengers).

While Plaintiffs assert that they were "among the Catholic faithful receiving ministry [and] pastoral" services (FAC ¶¶ 108, 117, 126), receiving ministry does not place them into a special relationship with the Holy See, dioceses, or bishops.  *See Bouchard v. N.Y. Archdiocese*, No. 04 CIV. 9978 (CSH), 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006) ("Plaintiff's allegations do not make out the existence of any sort of special relationship between the Church Defendants and Plaintiff beyond that general relationship between a church or religious body and a congregant.").  The Complaint also alleges the existence of a special relationship based on "the youth-serving functions of the Dioceses" (FAC ¶¶ 108, 117, 126), but New York courts do not recognize this as

a category of special relationships. *See Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 571,

573 (App. Div. 2005) ("Defendants' sponsorship of religious and educational programs for its

minor parishioners . . . was not, in itself, sufficient to create a fiduciary relationship with

plaintiff."); *see also Doe v. Maier*, No. CV184956SJFAKT, 2020 WL 9812927, at *18 (E.D.N.Y.

Mar. 24, 2020) (expressing reluctance to find new special relationships under New York law).

Plaintiffs' allegation that they received "educational services from clergy of the Dioceses"

(FAC ¶¶ 108, 117, 126) fails to support the existence of any special relationship with the Holy See

because "[t]he duty owed by a school to its students . . . stems from the fact of its physical custody

over them." *Pratt v. Robinson*, 39 N.Y.2d 554, 560 (1976).  With regard to the eleven Plaintiffs

who appear to allege abuse in connection with a school (FAC ¶¶ 7, 13, 15-17, 19, 21-22, 24-25,

32), the Complaint never alleges that the Holy See itself had the physical custody over them

required under New York law.  *Kimberly S.M. by Mariann D.M. v. Bradford Cent. Sch.*, 649

N.Y.S.2d 588, 590 (App. Div. 1996) (school officials owe common law duty to report abuse only

if it occurs while they have custody and control of students); *see also Jonathan A. v. Bd. of Educ.

of N.Y.*, 779 N.Y.S.2d 3, 5-6 (App. Div. 2004).

Plaintiffs also fail to allege that their injuries were foreseeable to the Holy See.  Had a duty

existed, liability would extend only to harms "within the class of reasonably foreseeable hazards

that the duty exists to prevent." *Sanchez v. State*, 99 N.Y.2d 247, 252 (2002).  Although Plaintiffs

attempt to rely on general knowledge allegations (FAC ¶¶ 109, 111, 118, 120, 127, 129), New

York law requires prior knowledge regarding the specific employee at issue.  *Kenneth R. v. Roman

Cath. Diocese of Brooklyn*, 654 N.Y.S.2d 791, 795, n.* (App. Div. 1997); *see also Pink v. Rome

Youth Hockey Ass'n, Inc.*, 28 N.Y.3d 994, 998 (2016) (organization's awareness of incidents of

violence between spectators did not establish foreseeability in individual case); *In re Archdiocese*

*of Milwaukee*, No. 11-20059-SVK, 2015 WL 1396628, at *10 (Bankr. E.D. Wis. Mar. 24, 2015) (rejecting "argument that knowledge of other pedophile priests created a duty to warn or disclose the risks of these pedophile priests to the [plaintiffs] and their families"); *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 644 (W.D. Va. 2016) (dismissing negligence claim where there was no allegation that the tortfeasor "had previously committed any sexual assault" and stating that "while it may be generally foreseeable—as well as unfortunate and troubling—that sexual assaults occur on college campuses, . . . that general risk does not translate into a 'reasonably foreseeable' risk that [the tortfeasor] would assault [the plaintiff]"); *Whitted v. Konkle*, No. 417CV00241SEBDML, 2018 WL 3619539, at *3 (S.D. Ind. July 30, 2018) ("general knowledge of such a potential danger is not tantamount to actual knowledge of the specific risk of serious harm or the offensive conduct itself"). Because Plaintiffs never allege that the Holy See had prior knowledge that the specific clerics at issue posed a danger to minors, their negligence claim fails.[12]

Finally, for the reasons stated above, Plaintiffs also fail to allege facts sustaining the causation element of negligence. *See supra* at 19-20, 27-28.

### 3.        Plaintiffs' Negligent Failure to Report Theory Fails

As part of the negligence claim, Plaintiffs theorize that the Holy See breached a duty of care by "preventing the Bishops" from "reporting known or suspected clergy sex abusers to law enforcement." FAC ¶ 112, 121, 130. The Complaint also asserts that bishops "had a duty to report clergy sexual abuse of children to law enforcement pursuant to . . . Social Services Law § 413." FAC ¶ 97. Plaintiffs' negligent failure to report theory fails for five independent reasons.

First, the New York reporting statute has never identified foreign sovereigns as designated reporters. *See* N.Y. Soc. Serv. Law § 413. Accordingly, none of the Plaintiffs states a claim for

---

[12] Although the Holy See repeatedly identified this defect in its original motion to dismiss (Dkt. 27 at 19, 25-26, 28), the Amended Complaint still fails to allege prior knowledge with respect to any of the clerics at issue. FAC ¶¶ 4-33.

failure to report based upon the Holy See's own acts or omissions.

Second, with regard to bishops – and assuming again that Plaintiffs could show attribution (*supra* at 8-17) – clergy *qua* clergy are not designated reporters under New York law.  N.Y. Soc. Serv. Law § 413.  Plaintiffs would therefore need to show that bishops fell within a recognized category of designated reporters.  Plaintiffs cannot do so for any of the relevant time periods.

New York law did not have a mandatory reporting statute before 1964, so Plaintiffs Smith and Curtis fail to state claims for alleged failures to report occurring in 1961 or 1962.  FAC ¶¶ 27-28.  From 1964 through 1973, only physicians and other health care workers were designated reporters.  N.Y. Penal Law § 483-d; 1964 N.Y. Laws 2123 (chapter 811); *In re Frances*, 267 N.Y.S.2d 566, 571 (Fam. Ct. 1966); *see also In re Young*, 270 N.Y.S.2d 250, 251 (Fam. Ct. 1966).  Thus, Plaintiffs Bruno, Burns, Caldwell, Castiglione, Dillard, Hurn, Agnello, Mondello, Leonard, and Taylor fail to state claims for alleged failures to report occurring before 1973 (FAC ¶¶ 5-8, 12, 14, 16, 17, 19, 31).

School officials became designated reporters in 1973 (1973 N.Y. Laws 2910-11 (chapter 1029)), and in 2007 the legislature clarified that a school official "includes but is not limited to school teacher, school guidance counselor, school psychologist, school social worker, school nurse, school administrator or other school personnel required to hold a teaching or administrative license or certificate."  2007 Sess. Law News of N.Y. Ch. 193 (S. 3913-A).[13]  Because bishops do not fall into these categories of designated reporters, Plaintiffs Blecher, Burns, Cavanaugh, B. Compasso, W. Compasso, Gillen, Jockel, Jones, J. O'Connor, T. O'Connor, Rice, Russo, Sparks,

---

[13] The legislative history explains that the definition codified the courts' existing interpretation of the term: "Including teachers, guidance counselors and other school personnel in the list of mandated reporters merely codifies existing case law that these individuals are 'school officials' required to report cases of suspected child abuse."  New York Bill Jacket, 2007 S.B. 3913, Ch. 193.

Senatore, Sexton, Lisiecki, Regan, Callender, and Gill have not stated a claim for the failure to report.  FAC ¶¶ 4, 6, 9-11, 13, 15, 18, 20-26, 29-30, 32, 33.

Third, the Complaint fails to allege that the Holy See or any bishops were aware of facts that "gave them reasonable cause to suspect" that these Plaintiffs were being abused by the named clerics.  N.Y. Soc. Serv. Law § 413.  As a result, even assuming *arguendo* that the Holy See and the bishops were designated reporters, Plaintiffs have not alleged any facts triggering a statutory duty to report.  *See Diana G-D ex rel. Ann D. v. Bedford Cent. Sch. Dist.*, 932 N.Y.S.2d 316, 327-29 (Sup. Ct. 2011) (holding that there was no duty to report where "none of the school employees witnessed any acts of the alleged abuse, saw any physical injury to [the plaintiff], or observed any behavioral issues from [the plaintiff] which would have given any of them 'reasonable cause' to suspect abuse or maltreatment.").[14]

Fourth, the Complaint fails to allege that any failure to report was willful.  A negligent failure to report does not violate the statute.  *See* N.Y. Soc. Serv. Law § 420 (a designated reporter "who knowingly and willfully fails" to make a report "shall be civilly liable for the damages proximately caused by such failure"); *see also Zimmerman ex rel. Zimmerman v. U.S.*, 171 F. Supp. 2d 281, 293-94 (S.D.N.Y. 2001).

Finally, the Complaint fails to allege facts showing that Plaintiffs' injuries were proximately caused by any failure to report.  N.Y. Soc. Serv. Law § 420; *Est. of Pesante ex rel. Pesante v. Geneva Med. Grp.*, LLP, No. 30779, 2002 WL 398517, at *5 (N.Y. Sup. Ct. Mar. 11,

---

[14] The Complaint also fails to offer facts showing any failure to report the named clerics' alleged abuse of any other victim.  FAC, *passim*.  In any event, while New York's reporting statute creates a duty of care for designated reporters to protect a child who is the subject of the report, it "should not make [designated reporters] liable to anyone the perpetrator abuses in the future."  *R.C. v. Diesfeld*, 785 N.Y.S.2d 325, 327 (Sup. Ct. 2004); *see also id.* (noting that "[t]he claim that 'but for' the failure to report, someone else would not have been abused, is far too speculative to support a cause of action"); *Lurene F. v. Olsson*, 740 N.Y.S.2d 797, 798-99 (Sup. Ct. 2002), *citing Marcelletti v. Bathani*, 500 N.W.2d 124 (Mich. App. 1993).

2002) ("Proximate cause must always be alleged and proven in a negligence case, and is required under SSL section 420(2) as well.")

Plaintiffs' negligent failure to report theory fails.

**B.    The CVA Does Not Apply to Plaintiffs' Claim Against the Holy See, Which is Otherwise Time-Barred**

Plaintiffs rely on the New York Child Victims Act (CVA), CPLR section 214-g, to argue that their claims are timely.  FAC ¶ 3.  CPLR section 214-g does not revive the statute of limitations for claims based upon any alleged conduct by the Holy See since a foreign sovereign does not qualify as a "person" under New York law.  Moreover, were Plaintiffs' attribution theory to be adopted such that the New York Corporations' conduct were to be imputed to the Holy See under *Bancec*, Plaintiffs' vicarious liability claim would not fall within the scope of the CVA either.

In relevant part, the CVA applies to "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a *person* for physical, psychological, or other injury or condition suffered as a result of" sexual abuse.  CPLR § 214-g. In New York, "[i]t has long been the law ... that the term 'person' generally does not include a governmental entity, unless a statutory definition expressly includes that governmental entity within the meaning of the term."  *Leonard v. Masterson*, 70 A.D.3d 697, 698 (2d Dep't 2010); *see also In re Fox's Will*, 52 N.Y. 530, 535 (1873); N.Y. Gen. Constr. Law § 37.  This presumption applies to foreign sovereigns just as it applies to sovereigns within the United States.  *See*, *e.g.*, *Breard v. Greene*, 523 U.S. 371, 378 (1998) (holding that a foreign state is not a "person" entitled to bring suit under 42 U.S.C. § 1983); *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 399-400 (2d Cir. 2009) (holding that foreign states are not "persons" under the Fifth Amendment).  Since section 214-g does not define "person" to include foreign sovereigns, the general presumption governs.  Accordingly, the statute does not revive the limitations period for

either negligent or intentional conduct by the Holy See, including the Holy See's alleged issuance of a "policy of secrecy."  CPLR § 214-g; *see also Lucesco Inc. v. Republic of Arg.*, 788 F. App'x 764, 767-68 (2d Cir. 2019) (holding that the term "person" in CPLR section 211(a) does not apply to foreign sovereigns); *White Hawthorne, LLC v. Republic of Argentina*, No. 16-CV-1042 (TPG), 2016 WL 7441699, at *5-7 (S.D.N.Y. Dec. 22, 2016) (same); *World Holdings, LLC v. Fed. Republic of Ger.*, 794 F. Supp. 2d 1341, 1349-51 (S.D. Fla. 2011) (same).

Plaintiffs' sweeping attribution theory also yields a related and surely unintended result.  If the conduct of the New York Corporations were freely attributable to the Holy See under *Bancec*, then the CVA could not be applied to claims arising from such conduct, since it would necessarily be considered the conduct of the non-"person" sovereign.  *See Frontera Res. Azer. Corp.*, 582 F.3d at 400 (holding that entity that is an agent under *Bancec* is not a "person" under the Due Process Clause); *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 301-02 (D.C. Cir. 2005) (same).  In other words, Plaintiffs cannot benefit both from an attribution theory that overcomes *Bancec* <u>and</u> the revival of their claim under the CVA.

Absent the CVA, Plaintiffs' negligence claim is time-barred.  CPLR § 214(5).

<u>**CONCLUSION**</u>

Based upon the foregoing, the Court should dismiss the Complaint with prejudice.

Dated: September 29, 2021                                                     Respectfully submitted,

<u>/s/ *Jennifer L. Bruno*</u>              <u>/s/ *Alexis Haller*</u>              <u>/s/ *Jeffrey S. Lena*</u>
Jennifer L. Bruno                        Alexis Haller                        Jeffrey S. Lena
Law Office of Jennifer Bruno      Law Office of Alexis Haller      Law Office of Jeffrey S. Lena
4768 Soquel Drive, #206           7960B Soquel Drive, #130        1152 Keith Avenue
Soquel, CA 95073                      Aptos, CA 95003                     Berkeley, CA 94708
Tel.: (312) 961-8056                  Tel.: (831) 685-4730               Tel.: (510) 847-3181
jenbruno@webmail.us              ahaller@ahlawoffice.com        jlena@sbcglobal.net

                                                                                     Counsel for Defendant Holy See