UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
ERIK BLECHER, *et al.*,

                   Plaintiffs,

       -v-

THE HOLY SEE,

                   Defendant.
———————————————————————

20-CV-3545 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs, thirty alleged victims of childhood clergy sexual abuse, bring a putative class action against Defendant the Holy See, seeking money damages for negligence on the ground that the Holy See mandated a policy of secrecy for its bishops and dioceses in response to allegations and reports of child sexual abuse by Roman Catholic clergy. The Holy See moves to dismiss the amended complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), for lack of standing, for failure to state a claim, and for improper venue as to the claims of 19 named plaintiffs. Because the Court concludes that it lacks jurisdiction under FSIA, the motion is granted.

**I.    Background**

    The following background comes from the allegations in the amended complaint, which "are assumed to be true." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021).

    Plaintiffs allege abuse in the 1960s, 1970s, 1980s, and 1990s by local priests or deacons of the Archdiocese of New York, the Diocese of Brooklyn, the Diocese of Rockville Centre, the Diocese of Syracuse, and the Diocese of Ogdensburg. FAC ¶¶ 4-33. The Archdiocese of New York and the Dioceses of Brooklyn, Rockville Centre, Syracuse, and Ogdensburg (collectively

"the New York Corporations") were all separate corporations organized and existing under New York law during the relevant time periods.

Plaintiffs allege that the Holy See had a "secrecy policy," set forth in a document titled *Crimen sollicitationis*, that "mandated that the Bishop follow a specific course of action in response to an allegation of child sexual abuse." FAC ¶¶ 64-68. Plaintiffs claim that the Holy See "knew or should have known that its strict secrecy policy would result in children in contact with Catholic clergy being sexually abused." FAC ¶ 111. Based on these allegations, each Plaintiff advances a single negligence claim predicated on the failure to warn children and parents of the dangers generally posed by "Catholic clergy" and the failure to report sex abusers to law enforcement and others. FAC ¶¶ 107-33.

## II.    Legal Standard

In its motion to dismiss, the Holy See raises a facial attack against the amended complaint under Federal Rules of Civil Procedure 12(b)(1)-(3) and 12(b)(6). Def. Mem. at 1. To survive the Holy See's motion to dismiss, Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). Although the Court accepts factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Supreme Court caselaw makes clear that district courts have broad discretion when determining how to consider challenges to subject matter jurisdiction." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial," *i.e.*, based solely on the allegations of the complaint and exhibits attached to it, "or fact-based," *i.e.*, based on evidence beyond the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). But while the Court "may refer to evidence outside the pleadings" when resolving a 12(b)(1) motion, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015), it is not invariably required to consider such evidence, *see Carter*, 822 F.3d at 56–58. It is only where "jurisdictional facts are placed in dispute" that the court has the "obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks omitted); *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999). When the extrinsic evidence submitted by the parties does not controvert the material allegations of the complaint, the Court may base its ruling solely on the allegations of the complaint. *See Carter*, 822 F.3d at 57.

**III.   Discussion**

Foreign states are presumptively immune from the jurisdiction of United States courts. *See* 28 U.S.C. § 1330(a)–(b) (creating jurisdiction for claims "with respect to which the foreign state is not entitled to immunity"); *Robles v. Holy See*, No. 20-CV-2106 (VEC), 2021 WL 5999337, at *2 (S.D.N.Y. Dec. 20, 2021) ("*Robles*") ("There is a presumption in the FSIA that foreign states are immune from the jurisdiction of courts in the United States."); *Schoeps v. Bayern*, 27 F. Supp. 3d 540, 542 (S.D.N.Y. 2014) (noting that the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country") (quoting *Argentine*

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). A foreign state is subject to the jurisdiction of a U.S. court only if one of the FSIA's enumerated exceptions applies. 28 U.S.C. § 1604; *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106 (2d Cir. 2016); *see also* 28 U.S.C. § 1330(a) (providing original jurisdiction); *Robles*, 2021 WL 5999337 at *2. Plaintiffs allege that 28 U.S.C. § 1605(a)(5) (the "Tortious Act Exception") applies. FAC ¶¶ 75-76; Pltfs. Mem. at 14. The Court concludes that the Tortious Act Exception applies, but that one of the exclusions to the Tortious Act Exception, 1605(a)(5)(A) (the "Discretionary Function Exclusion"), also applies, leaving the Court without jurisdiction over the Holy See.[1]

### A. Applicability of the Tortious Act Exception to the Alleged Tortious Conduct of the New York Corporations

The Tortious Act Exception applies to claims "in which money damages are sought against a foreign state for personal injury or death," for "the tortious act or omission of ... any official or employee of that foreign state while acting within the scope of his office or employment," if the act or omission and injury occurred in the United States. 28 U.S.C. § 1605(a)(5). There is, however, an exclusion to the Tortious Act Exception when the tortious act either (1) arose out of misrepresentation or deceit or (2) involved the exercise or performance of a discretionary function. *Id.* at 1605(a)(5)(A)–(B).

The Holy See first argues that the Tortious Act Exception does not apply because any tortious conduct was committed by the New York Corporations, which are separate legal entities, and it cannot apply to alleged tortious conduct by "agents" of the Holy See because the language

---

[1] Courts have treated the Holy See, as State of the Vatican, as a foreign state for purposes of the FSIA. *See, e.g.*, *O'Bryan v. Holy See*, 556 F.3d 361, 372-74 (6th Cir. 2009). The parties in this case do not dispute its status as a foreign state.

4

of the exception refers only to "officials" and "employees," not to "agents." Def. Mem. at 8-12. Plaintiffs dispute that this case is premised on the tortious acts of independent corporations, and argue, in the alternative, that the amended complaint includes sufficient factual allegations to overcome the presumption set out by the Supreme Court in *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 624–28 (1983) ("*Bancec*"), that instrumentalities of a foreign state have separate juridicial statuses. Pltfs. Mem. at 6, 8-14.

Under the FSIA, courts must treat corporate entities as presumptively separate from the foreign sovereign. *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 56 (2d Cir. 2021) (applying the "strong presumption" of independent status under *Bancec*). That presumption can be overcome (1) when "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," or (2) when recognizing the corporation as separate "would work fraud or injustice." *Bancec*, 462 U.S. at 629 (citations omitted). Plaintiffs do not argue that the second prong is applicable, so the Court focuses its analysis on the first.

The Second Circuit has held that the "touchstone inquiry for extensive control is whether the sovereign state exercise[s] significant and repeated control over the instrumentality's day-to-day operations." *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019). Additionally, five factors are relevant to the "extensive control" inquiry: whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state. *Id.* at 198.

5

The Court is persuaded by the reasoning in *Doe* and *Robles*, two cases similar to this one, that Plaintiffs have not overcome the *Bancec* presumption. In *Doe*, the Ninth Circuit held that a complaint against the Holy See alleging sexual abuse by an American priest failed to allege the level of control necessary to overcome the *Bancec* presumption. *Doe*, 557 F.3d at 1079–80. There, the "complaint [did] not allege day-to-day, routine involvement of the Holy See in the affairs of the" presumed separate entities. *Id.* at 1079. Plaintiffs attempt to distinguish *Doe* by arguing that the amended complaint makes factual allegations "significantly more developed and substantial than those in *Doe*," pointing to several paragraphs in the complaint. Pltfs. Mem. at 9-10; FAC ¶¶ 45-46, 53-57, 59.[2] The Court disagrees. As in *Robles*, the paragraphs to which Plaintiffs point contain only conclusory allegations that the Holy See exercised control over American bishops and their dioceses. *See, e.g.*, FAC ¶ 46 (alleging that "[t]he Holy See has

---

[2] Plaintiffs attempt to buttress the amended complaint's allegations with a declaration by a former priest, Thomas Doyle, filed in conjunction with their opposition to the Holy See's motion to dismiss. *See* Doc. 55-2. Given that the Holy See challenges Plaintiffs' amended complaint on its face, the Court has discretion to resolve jurisdictional issues by reviewing solely the amended complaint's well-pleaded facts together with information cognizable on a facial attack under established law. *See Harty*, 28 F.4th at 441 (district court did not abuse discretion by declining to consider affidavit submitted in opposition to defendant's facial attack on subject matter jurisdiction where affidavit was intended to enhance, not contradict, allegations in complaint); *O'Bryan v. Holy See*, 556 F.3d 361, 375-76 (6th Cir. 2009) ("A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading."); *Doe*, 557 F.3d 1066, 1073 (9th Cir. 2009) ("[I]n the foreign sovereign immunity context, [i]f the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff."); *Koster v. Grafova*, 2019 WL 2124532, at *7 (N.D. Ala. May 15, 2019) ("A court cannot consider extrinsic evidence for a Rule 12(b)(1) motion that presents a facial attack to subject matter jurisdiction."); *Integrity Soc. Work Servs.*, LCSW, LLC. v. Azar, 2021 WL 4502620, at *7 (E.D.N.Y. Oct. 1, 2021) ("A facial challenge is based solely on the allegations in the complaint"); *see also, e.g.*, *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, No. 2:17-CV-00061, 2018 WL 8370060, at *8 n.7 (D. Vt. Dec. 20, 2018) (holding that an affidavit "cannot be used" to amend a pleading by "asserting new facts or theories for the first time in opposition to a motion to dismiss").
  In any event, given the Court's conclusion below that the Tortious Act Exception applies for other reasons, the Holy See's motion to strike at Docket Number 61 is denied as moot.

substantial involvement in, and the unqualified right to, control the day-to-day business and operations of bishops in their dioceses, operating them as a single enterprise."). Such conclusory allegations are insufficient under the *Iqbal* standard. *De Quan Lu v. Red Koi, Inc.*, No. 17-CV-7291 (VEC), 2020 WL 7711410, at *3 (S.D.N.Y. Dec. 29, 2020). Plaintiffs do not attempt to explain how the amended complaint's allegations satisfy the *Kirschenbaum* factors.

Alternatively, Plaintiffs argue that common law agency principles should apply to overcome *Bancec*, citing several out-of-Circuit cases. Pltfs. Mem. at 10-14. But, as the Holy See notes, the Tortious Act Exception's plain language extends only to tortious conduct either by the "foreign state" or its "official or employee." Def. Mem. at 12 (citing 28 U.S.C. § 1605(a)(5)). "Because the FSIA includes the actions of 'an agent' of a foreign state as the basis for jurisdiction over the foreign state, the Court must presume that Congress intentionally omitted 'agent' from the section of the statute that establishes the Tortious Act Exception." *Robles*, 2021 WL 5999337 at *6 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). Plaintiffs fail to explain why the Court should hold to the contrary.

B.    **Whether Employees Fall Under the Tortious Act Exception**

This is not the end of the inquiry. As discussed above, Plaintiffs contend that the amended complaint alleges that the bishops, within the structure of the Roman Catholic Church, are themselves employees or officials of the Holy See, committing tortious acts through mandatory duties imposed by the Holy See. In other words, Plaintiffs' theory is that the Holy See itself employed the bishops under the New York state law definition of an employee. *See* Pltfs. Mem. at 5, 14-19; FAC ¶¶ 43-54, 76-79. The Holy See disagrees, arguing that under the doctrine of limited liability, a bishop must be presumed to act on behalf of his diocese, not on behalf of the Holy See. Def. Mem. at 14. The Holy See also argues that federal common law applies and that under either federal common law or New York law, the amended complaint's

7

employment allegations are insufficient as a matter of law. The Court concludes that the doctrine of limited liability does not categorically bar the bishops from being employees of the Holy See and that under New York law, the exception to the FSIA for tort liability based on the actions of an employee provides jurisdiction for claims of negligence against the Holy See at this stage of the analysis.

### 1. Doctrine of Limited Liability

The Holy See's argument that limited liability precludes jurisdiction under the exception is unpersuasive. The Holy See concedes that the amended complaint alleges that the bishops are employees of the Holy See, but directs the Court to *United States v. Bestfoods*, 524 U.S. 51 (1998), for the proposition that, with respect to conduct occurring within a diocese, a bishop must be presumed to act on behalf of his diocese, not on behalf of the Holy See. Def. Mem. at 14-15. *Bestfoods* addressed the definition of "operator" under the Comprehensive Environmental Response, Compensation, and Liability Act and involved a traditional parent-subsidiary relationship. 524 U.S. at 69-73. But here, "[t]he complex relationship between the central authority of the Roman Catholic Church and local church officials defies easy comparison to conventional conceptions of an employer-employee relationship." *Robles,* 2021 WL 5999337 at *6. Moreover, the Sixth Circuit addressed this issue in an action similarly alleging that the Holy See's strict secrecy policy caused the sexual abuse of children by Catholic clergy. *O'Bryan,* 556 F.3d at 369 (applying Kentucky law to the elements of the Tortious Act Exception). Though a "close call," *Robles,* 2021 WL 5999337 at *7, Plaintiffs have sufficiently alleged that the bishops are Holy See employees.

### 2. Whether Bishops Are Employees of the Holy See Under New York Law

The Holy See argues that the Court should apply federal common law to the definition of employment because § 1605(a)(5) was drafted based on the Federal Tort Claims Act ("FTCA"), and the FTCA applies federal law to the question of who is a government employee. Def. Mem. at 15-16. The weight of authority, however, directs that state law applies to the definition of employment as used in the Tortious Act Exception. *See Robles,* 2021 WL 5999337 at *7 (applying New York law to the elements of the Tortious Act Exception) *O'Bryan,* 556 F.3d at 369 (applying Kentucky law to the elements of the Tortious Act Exception); *Bancec*, 462 U.S. at 622 n.11 (holding that "where a state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances."); *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 325 (9th Cir. 1996) (defining "employee" under state law in FSIA tortious act case); *Doe v. Holy See*, No. CV 02-430-MO, 2011 WL 1541275, at *4 (D. Or. Apr. 21, 2011) (on remand, applying state law to the same question). The Second Circuit has not addressed this issue, but notably treats the FSIA "as a pass-through to state law principles." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996).[3] The Court will therefore apply New York law.

In New York, whether an employment relationship exists depends on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003) (citation omitted). The analysis is fact-specific and relevant factors can include, but are not limited to, whether the

---

[3] For the reasons stated in Judge Caproni's *Robles* opinion, the question of who is an "employee" also favors Plaintiffs under federal common law, 2021 WL 5999337 at *8, but the Court declines to engage in that analysis since it holds that New York law applies.

individual (1) works at his own convenience; (2) may engage in other employment; (3) receives fringe benefits; (4) is on the employer's payroll; and (5) is on a fixed work schedule. *Id.* (citations omitted); *see also D. S. v. Positive Behav. Support Consulting & Psych. Res., P.C.*, 197 A.D.3d 518, 520–21 (2d Dep't 2021).

The amended complaint alleges facts demonstrating a right of control consistent with New York law that are sufficient to satisfy the plausibility standard for pleading. *See, e.g.*, FAC ¶¶ 45-47, 52, 55, 57. Further, if a question of fact as to employment exists, dismissal at this stage is improper. *See, e.g., Murphy v. Guilford Mills, Inc.*, No. 02-CV-10105, 2005 WL 957333, at *5 (S.D.N.Y. Apr. 22, 2005) (holding employment status of tortfeasor "is often a question of fact" and, in a diversity case applying New York law, may be resolved as matter of law only "where the evidence in the record is undisputed").

### C. Elements of the Tortious Act Exception

"Section 1605(a)(5) is limited by its terms . . . to those cases in which the damage to or loss of property occurs in the United States." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434 (1989). The elements of the Tortious Act Exception are: (i) a tort "occurring in the United States"; (ii) caused by an act or omission; (iii) "of that foreign state or of any official or employee of that foreign state"; (iv) "while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5); *O'Bryan*, 556 F.3d at 381. In addition to the employment requirement, discussed *supra*, the Holy See argues that Plaintiffs have not met their burden for the first two elements. The Court disagrees.

The Second Circuit requires that the "entire tort" meet the situs requirement. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115–16 (2d Cir. 2013). Relying principally on the Sixth Circuit's *O'Bryan* decision, the Holy See argues that the "entire tort" rule precludes application of this requirement because the Holy See's mandatory secrecy policy was

promulgated in Rome, not the United States. Def. Mem. at 17-19. But in *O'Bryan*, the Sixth Circuit held that those portions of claims based on the bishops' local implementation of their employer's policy in supervising abusive priests satisfied the situs requirement. 556 F.3d at 386. Because Plaintiffs advance a similar theory giving rise to their tort claims, the Court concludes that the situs requirement is met here.

The Holy See also asserts that Plaintiffs fail to identify any causal link between the secrecy policy and their injuries. Def. Mem. at 19-20. The Court disagrees. The amended complaint contains ample well-pleaded allegations of alleged sexual abuse traceable to the alleged negligence of supervising clergy and the Archbishop. *See* FAC ¶¶ 4, 7, 12, 19, 22, 28-34.

Because the complaint adequately alleges that the bishops are Holy See employees acting within the scope of their employment, Plaintiffs have satisfied the elements of the Tortious Act Exception.

### D.  The Discretionary Function Exclusion to the Tortious Act Exception

The Tortious Act Exception excludes "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). It is at this stage of the analysis that Plaintiffs' claims for negligence based on the tortious acts of Holy See employees fail. Courts model their interpretation of the Discretionary Function Exclusion on the interpretation of an identical exclusion in the FTCA. *Doe*, 557 F.3d at 1083; *O'Bryan*, 556 F.3d at 383–84. "There is a two-part test: (1) whether the tortious act is discretionary in nature, meaning, it involves 'an element of judgment or choice' and (2) whether the conduct is of the nature that the exclusion was 'designed to shield.'" *Robles*, 2021 WL 5999337 at *12 (quoting *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). The Discretionary Function Exclusion is intended to insulate from

11

liability sovereign actions and decisions that involve an element of judgment or choice and that are based on public policy considerations. *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 538 (1988).

The first prong of the *Gaubert* test is met because the amended complaint fails to make any factual allegations that the tortious acts of Holy See employees were not discretionary. Plaintiffs' theory is that the failure to warn, disclose, or report about sexual abuse accorded with the Holy See's norms. *See* FAC ¶¶ 77-78; *see also id.*, ¶¶ 64-68, 109, 112, 118, 121, 127, 130. But, as the Holy See correctly points out, the Supreme Court has been clear that promulgation of a policy or regulation by employees *is discretionary in nature. Gaubert*, 499 U.S. at 323 ("there is no doubt" that the "promulgation of regulations" is protected by the Discretionary Function Exclusion); *Dalehite v. United States*, 346 U.S. 15, 35-36 (1953) (holding that the Discretionary Function Exclusion protects "determinations made by executives or administrators in establishing plans, specifications or schedules of operations" and that "*[i]t necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable*."). In *Gaubert*, the Supreme Court made clear that "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." 499 U.S. at 324. Moreover, common sense dictates that "there are many ways to minister to parishes and to run a diocese. And within that mosaic, the individual bishops and cardinals appear to have some discretion in how to deal with priests under their supervision, including, for example, keeping certain priests out of positions that involve contact with children." *Robles*, 2021 WL 5999337.

The second prong of *Gaubert* is also met. Courts have repeatedly held that the decision as to "whether to warn about [an individual's] dangerous proclivities . . . [is] the type of discretionary judgment[] that the exclusion was designed to protect." *Doe*, 557 F.3d at 1084; *see also*, *e.g.*, *Croyle by & through Croyle v. U.S.*, 908 F.3d 377, 381 (8th Cir. 2018) (relying on *Doe* and holding, in FTCA clergy sexual abuse case, that "[t]he decision whether to warn of [the priest's] sexual propensities or to take other action to restrict his contact with children is susceptible to policy analysis").

Accordingly, any alleged decision by Holy See employees regarding whether to warn or report falls within the Discretionary Function Exclusion. As a result, Section 1605(a)(5)(A) precludes subject matter jurisdiction under the Tortious Act Exception to the FSIA.[4]

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by the Holy See is GRANTED, and the amended complaint is dismissed for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act.

The Clerk of Court is directed to terminate the motions at Docket Numbers 43 (granted) and 61 (denied as moot).

The Clerk is directed to enter final judgment in favor of the Holy See and to close this case.

SO ORDERED.

Dated: September 28, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[4] Because subject matter jurisdiction is lacking, the Court declines to address the other arguments raised in the Holy See's motion to dismiss.